**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD J. SILVERBERG | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-1868 |
| DUPONT DE NEMOURS INC. *ET AL.* | : | |

| | | |
|---|---|---|
| RICHARD J. SILVERBERG | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 24-924 |
| DUPONT DE NEMOURS INC. *ET AL.* | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                    **APRIL 2, 2024**

This is yet another lawsuit by *pro se* Plaintiff Richard J. Silverberg ("Silverberg" or "Plaintiff") alleging that state proceedings against him are not legitimate, but are the product of an unlawful conspiracy against him by the City of Philadelphia (the "City") and various City and Pennsylvania officials and other individuals and entities.  Presently before the Court is Silverberg's Motion for Temporary Restraining Order and Preliminary Injunction ("Injunction Mot.," ECF No. 8) asking this Court to enjoin ongoing attorney disciplinary proceedings against him.  For the following reasons, Silverberg's Motion will be **DENIED**.

I.   **BACKGROUND**

   A.   **Plaintiff's Litigation History**

      *1.*   *The* Jackson *State and Federal Lawsuits*

Under the circumstances of this matter, it is appropriate to note at the outset that although Silverberg is *pro se*, he is an attorney currently admitted to practice law in the Commonwealth of Pennsylvania and is subject to the jurisdiction of the Disciplinary Board of the Pennsylvania

Supreme Court (the "Disciplinary Board").  (*See* Petition for Discipline, ECF No. 8-3, at ¶ 2.)[1] *See also* Disciplinary Board Public Information for Richard Joseph Silverberg (listing Silverberg's status as an active attorney admitted to practice in Pennsylvania, available at *https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/48329* (last visited March 29, 2024)).  This status apparently has not deterred Silverberg from filing serial federal lawsuits alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and other federal and state law claims as vehicles to undo or circumvent previous court rulings adverse to claims he has advanced on his client's or his own behalf in matters arising from the same underlying facts.

      The federal lawsuits referenced herein arise from two sets of unrelated state court actions filed in the Court of Common Pleas of Philadelphia.  The first set involves a lawsuit Silverberg pursued as counsel for Mark Jackson ("Jackson") alleging invasion of privacy, intentional infliction of emotional distress, and civil conspiracy claims against Jackson's former employer Rohm & Haas Company ("Rohm & Haas") and other Rohm & Haas personnel, *see Jackson v. Rohm & Haas et al.*, No. 990601906 (Phila. Cty. Ct. Com. Pl.) (filed June 17, 1999) ("*Rohm & Haas* State Case"), and a separate but related lawsuit Silverberg filed on Jackson's behalf against a female former Rohm & Haas co-worker.  *See Jackson v. McCrory*, No. 990601906 (Phila. Cty. Ct. Com. Pl.) (filed July 1, 1999) ("*McCrory* State Case").  On August 31, 2000, the *Rohm & Haas* State Case and the *McCrory* State Case were consolidated (the "Consolidated State Cases.").  *See McCrory* State Case docket, available at https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames (last visited Mar. 29,

---

[1] Paragraphs 1-130 of the Petition for Discipline are docketed at ECF No. 8-3, and the remainder of the Petition is docketed at ECF No. 8-4.

2024). Jackson and his counsel, Silverberg, ultimately did not prevail in these cases, and their appeals were exhausted in 2004. *See Jackson v. Rohm & Haas Co. et al.*, 56 Pa. D. & C. 4th 449, 450 (Phila. Cty. Ct. Com. Pl. 2002), *aff'd*, No. 1710 EDA 2002 (Pa. Super. Ct. July 31, 2003), *reh'g denied* (Oct. 1, 2003), *appeal denied*, No. 540 EAL 2003 (Pa. May 4, 2004).

On September 19, 2003, while the Petition for Allowance of Appeal in the Consolidated State Cases was pending, Silverberg filed a federal lawsuit on behalf of Jackson against Rohm & Haas, Rohm & Haas employees, and their state court lawyers, asserting RICO and pendant state law claims. *See Jackson v. Rohm & Haas Co. et al.*, No. 03-5299, 2005 WL 1592910, at *1-3 (E.D. Pa. June 30, 2005) ("*Jackson I*") (setting forth background of Consolidated State Cases and *Jackson I*), *aff'd*, No. 06-1540, 2007 WL 579662 (3d Cir. Feb. 26, 2007). The district court dismissed Jackson's Amended Complaint, finding that he lacked standing to bring RICO claims and declining to exercise supplemental jurisdiction over his state law claims. *Id.* at *4-5.

On September 19, 2005, Silverberg filed another federal lawsuit alleging that the *Jackson I* defendants, their *Jackson I* lawyers, and Rohm & Haas's disability insurance administrator engaged in improper conduct in connection with *Jackson I*. *See Jackson v. Rohm & Haas Co.*, No. 05-4988, 2006 WL 680933 (E.D. Pa. Mar. 9, 2006) ("*Jackson II*"), *aff'd*, 366 F. App'x 342 (3d Cir. 2010). The defendants moved to dismiss the complaint and for sanctions based on that pleading, Jackson filed an amended complaint, and the court sanctioned Silverberg, finding the complaint's claims under RICO and 42 U.S.C. § 1985 were "unwarranted and frivolous." *Id.* at *5-6. Jackson later filed a second amended complaint, five claims of which ultimately survived dismissal. *Jackson II*, 2007 WL 2702804, at *8 (E.D. Pa. Sept. 12, 2007) (denying motion to dismiss two RICO counts and three counts under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1002 *et seq.*).

On August 18, 2006, while *Jackson II* was pending, Silverberg filed a third federal action, adding claims relating to the termination of Jackson's employment and disability benefits. *See Jackson v. Rohm & Haas Co.*, No. 06–3682, 2007 WL 2668001 (E.D. Pa. Sept. 5, 2007) ("*Jackson III*"). The court dismissed most of the claims alleged in the original *Jackson III* complaint. *Id*. at *14 (dismissing all counts except one ERISA claim and two state-law claims), *modified in part*, 2007 WL 2702797, at *2 (E.D. Pa. Sept. 12, 2007) (dismissing the two state-law claims as to defendant Liberty Life). The court later consolidated *Jackson II* and *III* and ordered plaintiff to file a consolidated amended complaint, which must "alleg[e] all claims for which he has a good faith basis" and "must be concise and . . . comply with all federal and local rules." *See Jackson III*, at ECF No. 93 (E.D. Pa. May 22, 2008). On March 19, 2009, the court ordered 21 of 25 claims asserted in the 152-page consolidated amended complaint dismissed with prejudice "as a sanction for, *inter alia*, [plaintiff's] continuing failure to file a properly-pleaded complaint and his chronic obstinacy regarding the court's orders and decisions." *Jackson II*, 2009 WL 773936, at *1-2 (E.D. Pa. Mar. 19, 2009), *aff'd*, 366 F. App'x 342 (3d Cir. 2010).

      2.      The Tax and PUFTA Cases and <u>Silverberg I</u> and <u>Silverberg II</u>

The second set of state court actions were brought by the City against Silverberg and businesses with which he was affiliated. The City filed the first action to collect unpaid business privilege and wage taxes owed by Silverberg and his former law firm for the period of 1992 through 2004. *See City of Philadelphia v. Richard J. Silverberg & Associates, P.C. et al.*, No. 080301510 (Phila. Cty. Ct. Com. Pl.) (the "Tax Case").

On June 20, 2019, Silverberg filed suit in this Court alleging that the City, its employees, and others engaged in unlawful tax collection practices in violation of various state and federal laws. *See Silverberg v. City of Philadelphia*, No. 19-2691, 2020 WL 108619, at *1 (E.D. Pa.

4

Jan. 8, 2020) ("*Silverberg I*"), *aff'd*, 847 F. Appx 152 (3d Cir. 2021). The complaint asserted claims under RICO, 42 U.S.C. § 1983, and state law. Silverberg also filed a motion for a TRO and preliminary injunction, which the Court denied after holding a hearing. *Silverberg I*, 2019 WL 4059015, at *3 (E.D. Pa. Aug. 27, 2019). Silverberg subsequently filed an amended complaint and a second motion for a TRO, and defendants moved to dismiss the amended complaint. (*See Silverberg I*, at ECF Nos. 19, 23, 27, 33.) On January 8, 2020, we dismissed Silverberg's amended complaint based on the *Rooker-Feldman* and *Younger* doctrines and principles of comity. *Silverberg I*, 2020 WL 108619, at 5-7.

The second case by the City alleged that Silverberg and ELS Realco, LLC ("ELS") violated the Pennsylvania Uniform Fraudulent Transfers Act, 12 Pa. Stat. and Cons. Stat. Ann. § 5101 *et seq.*, when ELS purchased a property in December 2011 so that Silverberg could avoid paying the $310,586.53 default judgment entered against him in the Tax Case. *See City of Philadelphia v. Richard J. Silverberg et al.*, No. 190903805 (Phila. Cty. Ct. Com. Pl.) (the "PUFTA Case").

On October 12, 2029, Silverberg filed a second federal lawsuit against the City; Philadelphia Court of Common Pleas Judge Joshua H. Roberts; the William Penn Foundation, a non-profit charitable organization; and various City officials. *Silverberg et al. v. City of Philadelphia et al.*, No. 20-5034, at ECF Nos. 1 (Compl.), 14 (Am. Compl.) (E.D. Pa.) ("*Silverberg II*"). Silverberg again alleged claims under RICO, § 1983, and state law. Both *Silverberg I* and *Silverberg II* were essentially premised on the theory that the Tax and PUFTA Cases were not legitimate, but were improper schemes to make up for insufficient revenue produced by the City beverage tax and to fund City Initiatives. Defendants moved for Rule 11 sanctions within days of Silverberg's filing of the amended complaint, and Silverberg voluntarily

dismissed the case one day after the deadline to respond to the motion for sanctions. *Id.* at ECF Nos. 17, 30.

  **B.**  **The Disciplinary Proceedings**

By letter dated March 24, 2022, the Disciplinary Board's Office of Disciplinary Counsel ("ODC") sent Silverberg an ODC Form DB-7 (Request for Statement of Respondent's Position) ("DB-7") notifying him that he was the subject of disciplinary proceedings commenced after the ODC received complaints indicating that Silverberg's conduct may have violated the Pennsylvania Rules of Professional Conduct (the "Disciplinary Proceedings").[2] (DB-7, ECF No. 8-1, at 1.) *See also* Pa. Disc. Bd. Rules § 87.7 (providing for transmission of DB-7 to, and duty to respond of, respondent-attorney). The DB-7 advised Silverberg that the complaints were submitted to the ODC by the Hon. Daniel J. Anders of the Philadelphia Court of Common Pleas and Brian Ross Cullin, Esquire, then a Philadelphia Deputy City Solicitor, and that the complaints had survived the ODC's initial screening process. (*Id.*) *See also* Pa. Disc. Bd. Rules § 87.1 (providing for ODC investigation of complaints), § 87.4 (providing for preliminary screening and docketing of complaints). The DB-7 also sets forth in detail the alleged facts under consideration by the ODC, which concern Silverberg's conduct and statements in connection with the Tax and PUFTA Cases and *Silverberg II*.

On December 6, 2023, the ODC filed a Petition for Discipline against Silverberg. *See Office of Disciplinary Counsel v. Richard Joseph Silverberg*, 172 DB 2023.[3] The misconduct

---

[2] The disciplinary process is governed by the Pennsylvania Rules of Disciplinary Enforcement, Pa. R.D.E., Rule 101, *et seq.* Detailed procedures for complaint initiation, investigation, screening, and additional informal and formal proceedings are set forth in the Disciplinary Board Rules, Pa. Disc. Bd. Rules § 85.1, *et seq.*

[3] The Petition for Discipline docket is available at https://www.padisciplinaryboard.org/for-the-public/find-attorney/docket?attorneyId=48329&docketNumber=172+DB+2023 (last visited March 27, 2024).

alleged in the 210-paragraph Petition includes Silverberg's repeated failure to comply with court orders in the Tax and PUFTA Cases. *See* Petition for Discipline ¶¶ 77, 78, 81, 86, 87, 93, 94, 149, 155, 158, 175, 180, 184, and 192. The Petition also charges Silverberg with making numerous knowingly or recklessly false and fraudulent statements about Judge Roberts in the Tax and PUFTA Cases, in letters transmitted to senior judicial officers, and in filings in the *Silverberg II* federal case, including accusing Judge Roberts of misconduct, improper and illegal actions, deception, dishonesty, conspiring to engage in unlawful acts, engaging in fraud and/or a cover-up, and civil and criminal violations. *See*, *e.g.*, *id.* ¶¶ 119-123, 139-140, 147-148, 171-172, and 186-190. Based on the conduct alleged, the Petition for Discipline charges Silverberg with violating Pennsylvania Rules of Professional Conduct 3.1, 3.3(a)(1), 3.4(a), 8.2(a), 8.4(c), and 8.4(d). *Id.* ¶ 210.

On January 29, 2024, Silverberg filed his Answer to the Petition for Discipline. (ECF 8-5.) The Disciplinary Board subsequently scheduled a pre-hearing conference for March 11, 2024, and set Silverberg's disciplinary hearing for May 1-3, 2024. (March 7, 2024, Notice of Prehearing Conference and Hearings, ECF No. 8-6.) On March 7, 2024, Silverberg sent a letter to the Chair of the Hearing Committee in his Disciplinary Proceedings, in which he asserted that:

- Because the ODC, ODC Chief Disciplinary Counsel Thomas J. Farrell, and ODC Disciplinary Counsel Richard Hernandez, as well as Judges Roberts and Anders, are Defendants in the instant § 1983/civil RICO federal lawsuit, "both ODC and the Disciplinary Board (as an arm of the Supreme Court) are conflicted for purposes of the instant proceedings."

- "As the ODC well knows, where, as here, a lawsuit and Petition pertain to the same factual questions/disputes, the disciplinary proceedings are pre-empted. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745-46 (1983) (where a lawsuit and administrative proceedings present the same factual questions, the administrative proceedings are pre-empted)."

- "[I]t is likely that at least some participants [in the Disciplinary Proceedings] and the Disciplinary Board itself also will be added as defendants in [this federal

- action]" if the Board continues to pursue disciplinary proceeding despite its [purported] lack of jurisdiction.

- The Disciplinary Proceedings, in which he will not participate, are preempted, unconstitutional, "constitute obstruction/extortion," and are "filed/pursued for wrongful/unlawful/unethical purposes."

- He "does not believe [this Court] will be particularly sympathetic to an administrative agency seeking to undercut its authority, and/or which is proceeding against plaintiff counsel's law license based upon a manufactured Petition, especially where there is no jurisdiction to hear the matter in the first instance."

(Mar. 7, 2024 Ltr., ECF No. 8-7.) The day after sending the above missive, Silverberg filed a Motion for Deferment in the Disciplinary Proceedings requesting their deferral until final resolution of Silverberg's latest federal lawsuits, *Richard J. Silverberg v. DuPont de Nemours, Inc. et al*, Nos. 23-1868 ("*Silverberg III*") and 24-924 ("*Silverberg IV*"), currently before this Court. (Mot. for Deferment, ECF No. 8-8.) On March 19, 2024, Silverberg emailed a letter to this Court enclosing the March 18, 2024, Disciplinary Board Order denying his Motion for Deferment. (Mar. 19, 2024 Ltr., on file with the Court.)

### C. The Current Federal Lawsuits

#### 1. *Silverberg III*

Silverberg filed his Complaint initiating *Silverberg III* on May 17, 2023. (No. 23-1868, ECF No. 1.) The 13-count, 163-page, 518-paragraph Complaint named 26 Defendants (along with 15 John Does).[4]

---

[4] The Defendants named in the Complaint were DuPont de Nemours, Inc. ("DuPont"); Dow, Inc. ("Dow"); Corteva, Inc. ("Corteva"); International Flavors & Fragrances, Inc. ("IFF"); Avantor, Inc. ("Avantor"); Liberty Mutual Group, Inc. ("Liberty Mutual"); The Vanguard Group, Inc. ("Vanguard"); William Penn; the City; Ballard Spahr LLP ("Ballard"); Gellert Scali Busenkell & Brown LLC ("Gellert Scali"); Edward Breen, Chairman and CEO and/or Executive Chairman of DuPont and CEO of DowDuPont.; Andrew Liveris, Chairman and CEO of Dow and Executive Chairman of DowDuPont; Rajiv Gupta, Chairman, President, and CEO of Rohm & Haas, Chairman of Avantor, and member of DuPont and Vanguard Boards of Directors; Andreas Fibig, Chairman and CEO of IFF; David H. Long, Chairman, President, and CEO of Liberty Mutual.; Timothy Buckley, Chairman and CEO of Vanguard.; Janet Haas, M.D., Board Chair of William Penn; Judge Roberts; Judge Anders; City Mayor James

The Complaint asserted the following claims: Violation of Constitutional Rights (First Amendment right to free speech/petition), 42 U.S.C. § 1983 (Count I); RICO – Obstruction of Justice/Interference with Commerce, 18 U.S.C. §§ 1962(c), 1951 (Count II); RICO – Obstruction of Justice, 18 U.S.C. §§ 1962(c), 1512(b)-(d) (Count III); RICO – Obstruction of Justice, 18 U.S.C. §§ 1962(c), 1503 (Count IV); RICO – Mail/Wire Fraud, 18 U.S.C. §§ 1961 et. seq., 1341, 1343 (Count V); RICO – Conspiracy, 18 U.S.C. §§ 1961, 1962(d) (Count VI); Retaliation, 42 U.S.C. § 1983 (Count VII); Abuse of Process (Count VIII); Tortious Interference with Business Relations (Count IX); Fraud (Count X); Negligent Misrepresentation (Count XI); Intentional Infliction of Emotional Distress (Count XII); and Civil Conspiracy (Count XIII). The Complaint asserted all claims against the City Defendants (the City, Mayor Kenney, Pratt, Cortes, O'Connell, and Cullin), Gellert Scali, and Seitz, and asserted all claims except those under § 1983 (Counts I and VII) against the other Defendants.

On March 8, 2023, more than a month before any of the Defendants were required to respond to the Complaint, Silverberg filed a Motion for Partial Summary Judgment as to eight Counts of the Complaint. (ECF No. 54.) We denied that Motion *sua sponte* as premature. (ECF No. 56.) Thereafter, all Defendants filed Motions to Dismiss the Complaint in its entirety. (*See* ECF Nos. 67-80.) On September 25, 2023, before his responses to the Motions were due, Silverberg filed a 117-page, 393-paragraph Amended Complaint, which, in addition to other limited deletions, additions and modifications, dropped Judges Roberts and Anders as Defendants and omitted all references to and allegations about the Judges that were contained in

---

Kenney; former City Solicitor Marcel S. Pratt, Esquire; former City Solicitor Diana Cortes, Esquire; Marissa O'Connell, Esquire, Divisional Deputy City Solicitor, Tax & Revenue Unit; former Deputy City Solicitor Brian R. Cullin, Esquire; and Gellert Seitz partner Gary F. Seitz, Esquire. (Compl., ECF No. 1 at ¶¶ 2-44.) Plaintiff has yet to identify or serve any John Doe Defendants.

the original Complaint.  (*See generally,* Am. Compl., ECF No. 81.)  The Amended Complaint alleges thirteen claims that are essentially identical to those in the initial Complaint.[5]  (*Id.*)

Although the allegations in the Amended Complaint are somewhat pared down, it, like the Complaint, is premised on a wildly expansive, mind-boggling alleged conspiracy—which Silverberg terms the "proxy war." (*Id.* ¶¶ 45-49.)  According to Silverberg, the City has filed and pursued the Tax and PUFTA Cases, not to collect taxes legitimately owed, but "as part of a 'proxy war' on behalf of (and for the benefit) of certain third parties including [D]efendants Dow, DuPont, Corteva, and Liberty Mutual, their predecessors/successors, affiliates, certain individuals, and/or others . . . ." (*Id.* ¶ 47.)  The purpose of the "proxy war," Silverberg alleges, is to "delay, deter, dissuade, and/or prevent" Silverberg from publishing his "anticipated"—*but as-yet hypothetical*—book about what he calls "the Jackson odyssey" and from disseminating "any account . . . of the subject matter of the book, and/or any related claims in connection with defendants' wrongful/unlawful activities," and "to retaliate against Silverberg for engaging in protected activity." (*Id.*)  The "Jackson odyssey" refers to the Consolidated State Cases and the *Jackson I*, *II*, and *III* federal lawsuits.  The Amended Complaint alleges that "[a] primary purpose of the proxy war simply has been to entangle [Silverberg] in baseless litigation, a not uncommon tactic by certain abusers, which causes resources to be squandered and is itself wrongful/unlawful."[6]  (*Id.* ¶ 49.)

---

[5] In the Amended Complaint, Fraud is alleged in Count IX, Tortious Interference with Business Relations in Count X, and Count XI alleges Conversion instead of the previous claim for Negligent Misrepresentation.  (*Id.*)

[6] The obvious irony in this assertion is that given Silverberg's litigation history and the pending Disciplinary Proceedings, his apt acknowledgment of the harm caused by "baseless litigation" may result in him finding himself "hoist with his own petard." *See* William Shakespeare, *Hamlet*, act III, sc. iv.

10

In what seems an allegation of improbable conspiratorial foresight—given that the Disciplinary Proceedings had been underway for more than a year before Silverberg first alleged his "proxy war" theory—he further alleges that the "proxy war" "has also included a malicious smear campaign, predicated upon knowing and/or manufactured falsehoods, intended to damage/destroy plaintiff's professional and personal reputation, and which has included the filing of baseless Complaints with the Disciplinary Board of the Supreme Court of Pennsylvania."  (*Id.* ¶ 48.)

The foregoing summary of the elaborate and enduring alleged "proxy war" is followed by 287 mind-numbing paragraphs—under 41 headings with little discernable connection to each other or the alleged scheme—setting forth the allegations that Silverberg claims demonstrate the reasons for, and existence and purposes of the "proxy war."  These allegations are at once conclusory and littered with so many dubiously relevant details that the purported facts are marginally comprehensible at best.

All Defendants again filed Motions to Dismiss the Amended Complaint.  (*See* ECF Nos. 83-94.)  The Motions argue that the Amended Complaint should be dismissed in its entirety on numerous grounds, including under Fed. R. Civ. P. 12(b)(1) based on the *Barton* and *Rooker-Feldman* doctrines, the Tax Injunction Act, principles of comity, quasi-judicial immunity, and *Younger* abstention; under Fed. R. Civ. P. 12(b)(6) based on *res judicata,* failure to plausibly allege the RICO and other claims, failure to comply with the pleading requirements of Rules 8 and 9(b) and as a "shotgun pleading"; and under Fed. R. Civ. P. 12(b)(5) for insufficient service of process.  (*See, e.g.*, ECF Nos. 83, 84, 86-1.)  Silverberg filed an 89-page Response (ECF No. 95) to the City Defendants' Motion (ECF No. 83), which he incorporated as his Responses to the other Defendants' Motions.  (*See* ECF Nos. 96-106).  The Motions to Dismiss and the

sufficiency of Silverberg's Amended Complaint are under consideration and will be addressed in a future memorandum and order. Nevertheless, we note that review of the pleadings and other filings thus far in *Silverberg III* and *IV* calls to mind the following observation by Judge Pollak in *Jackson* II:

> [I]n the course of this hard-fought litigation counsel's zeal undermined his judgment; very regrettably, his zeal has taken him well beyond the bounds of negligence and into a realm of relative indifference to the legal setting in which he was crafting his pleadings. It should be added that, . . . this is not the first lawsuit between these parties-in fact, it is the third lawsuit by the same plaintiff against the same core defendants, and arising out of the same alleged harms (but with the cadres of accused defendants and the categories of alleged harms enhanced at each iteration of the charges).

*Jackson II*, 2006 WL 680933, at *7.

    2.  Silverberg IV

Silverberg filed the *Silverberg IV* Complaint on March 4, 2024. (Comp., ECF No. 1.) The Complaint names the same 26 Defendants as in the initial *Silverberg III* Complaint, including Judge Roberts and Judge Anders (*id.* ¶¶ 29, 30, 36, 37), and additionally names as Defendants the ODC, Farrell, and Hernandez. (*Id.* ¶¶ 13, 27, 28, 33, 35.) The 50-page, 160-paragraph Complaint asserts eleven claims that are essentially identical to Counts I-IX, XII, and XIII in the *Silverberg III* Amended Complaint. The *Silverberg IV* Complaint restates verbatim or in substance a number of allegations from *Silverberg II* and *III* (*see, e.g.*, *id.* ¶¶ 47, 55, 56, 59, 60, 66, 69) and incorporates the *Silverberg III* Amended Complaint in full. (*Id.*, ¶ 41.)

The only significant difference between the *Silverberg IV* Complaint and the Complaint and Amended Complaint in *Silverberg III* is the addition of allegations reciting Silverberg's description of the Disciplinary Proceedings and the alleged deficiencies therein, and a litany of unsupported conclusory allegations that those proceedings and the ODC and its officials are part

12

of the ever-expanding cast of conspirators engaging in dishonest and unlawful conduct targeting Silverberg for the purpose of advancing the alleged "proxy war," and that the Disciplinary Proceedings are preempted, that there is no foundation for the allegations of misconduct against Silverberg, and that the ODC did not conduct a "proper/legitimate" investigation. (*See*, *e.g.*, *id.* ¶¶ 59-72, 85-95, 101-104.)

As to each claim the Complaint seeks damages in excess of $150,000. The Complaint does not seek declaratory or injunctive relief. The Complaint has not yet been served on most of the Defendants, and as to Defendants who have waived service, their responses to the Complaint are not due until May 6, 2024. On March 15, 2024, Silverberg filed the Injunction Motion in both *Silverberg III* and *Silverberg IV*. (No. 24-924, ECF No. 8; No. 23-1868, ECF No. 107.)

## II.     LEGAL STANDARD

### A.     Injunctive Relief

"The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction." *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015). "The Supreme Court has emphasized that 'a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Benner v. Wolf*, 461 F. Supp. 3d 154, 161 (M.D. Pa. 2020) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) ("Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." (citation and internal quotation marks omitted)).

A movant seeking injunctive relief must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Pennsylvania*

*v. DeJoy*, 490 F. Supp. 3d 833, 855 (E.D. Pa. 2020) (citing *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 20, (2008)), *order clarified*, No. 20-4096, 2020 WL 6580462 (E.D. Pa. Oct. 9, 2020). The district court should consider the first two factors as a threshold test, and if those are satisfied, "[the] court then considers the remaining two factors, possibility of harm to others and the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). A party that does not meet its burden on either of [the] first two prongs of the preliminary injunction standard cannot be granted preliminary relief. *Id.* at 179-80.

### B.     *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37 (1971), "the Supreme Court announced the principle that federal courts are required to abstain from enjoining parallel pending state criminal proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Murphy v. Off. of Disciplinary Couns.*, No. 17-1239, 2019 WL 4752059, at *14 (E.D. Pa. Sept. 30, 2019) (quoting *Younger*, 401 U.S. at 43-44), *aff'd*, 820 F. App'x 89 (3d Cir. 2020). The *Younger* doctrine reflects the recognition that states "ha[ve] an extremely important interest in maintaining and assuring the professional conduct of the attorneys [they] license[]," and "traditionally have exercised extensive control over the professional conduct of attorneys." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434. The *Younger* abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."

The Supreme Court has extended *Younger* to "civil enforcement proceedings, and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Murphy*, 2019 WL 4752059, at *14 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)). Moreover, the Supreme Court has

14

recognized that "state attorney disciplinary proceedings are exactly the type of proceedings envisioned by *Younger* since they affect 'vital state interests' and 'bear a close relationship to proceedings criminal in nature.'" *Koresko v. Off. of Disciplinary Coun. of the Disciplinary Bd. of the Sup. Ct. of Pa. ex rel. Killion*, No. 14-1154, 2015 WL 1312269, at *3 (E.D. Pa. Mar. 24, 2015) (quoting *Middlesex*, 457 U.S. at 432).

For the *Younger* abstention doctrine to apply, three conditions must be satisfied: (1) state court proceedings must be ongoing and judicial in nature; (2) the state court proceedings must implicate important state interests; and (3) those proceedings must afford an adequate opportunity to raise federal claims. *See Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)). If all three prongs of the *Younger* analysis are met, federal courts should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Feingold v. Off. of Disciplinary Couns.*, 487 F. App'x 743, 745 (3d Cir. 2012) (citing *Middlesex*, 457 U.S. at 435).)

### III. DISCUSSION

Disposition of the Injunction Motion is straightforward.  When the conspiracy theories and tangled web of "proxy war" and "Jackson odyssey" allegations are cleared away, the Injunction Motion is revealed as nothing more than Plaintiff's attempt to derail or delay the Disciplinary Proceedings against him.  This attempt fails because (1) Silverberg cannot satisfy the requirements for injunctive relief; and (2) interference with the Disciplinary Proceedings would be contrary to *Younger* and would undermine principles of comity and respect for Pennsylvania's important interest in regulating the conduct of attorneys it has licensed.

### A. Silverberg Has Not Shown Entitlement to Injunctive Relief

Silverberg fails to show any likelihood of success in his federal challenge of the Disciplinary Proceedings because, among other reasons, federal court interference in those proceedings is precluded by the *Younger* abstention doctrine.

Silverberg also has not shown that he will suffer irreparable harm if the Disciplinary Proceedings are not enjoined. Rather, he offers the conclusory assertion that because of the Disciplinary Proceedings, he "faces discipline up to and including disbarment, not because plaintiff violated the RPC, but because defendants are utilizing the disciplinary process to facilitate the proxy war" (Mot. at 31), followed by a string cite to cases referencing substantive due process and retaliation for the exercise of constitutional rights. (*Id.*) Conspicuously missing are any facts or even cogent allegations from which the Court could infer that the Disciplinary Proceedings pose a risk of irreparable harm—constitutional or otherwise—to Silverberg. *See*, *e.g.*, *Robinson v. California State Bar*, No. 15-80129, 2015 WL 3486724, at *4 (N.D. Cal. May 28, 2015) (alleged potential revocation of law license and accompanying financial and reputational damage were "conclusory[] and speculative," and "insufficient to warrant injunctive relief"); *Rose v. Utah State Bar*, No. 10-1001, 2010 WL 4788491, at *2 (D. Utah Nov. 17, 2010) ("The fact that Plaintiff was compelled to respond to attorney disciplinary proceedings against her will is not a First Amendment injury, regardless of whether she subjectively believes the State Bar disciplinary proceedings were brought to "silence" her.").

Because Silverberg fails to satisfy the first two prerequisites for an injunction, we need not address the final two factors. Nevertheless, we note that both the balance of equities and the public interest weigh against the requested injunction. Again, Silverberg offers only conclusory assertions, contending as to the balance of equities that the "sham disciplinary proceedings based upon a frivolous Petition that identifies no violations of the RPC by plaintiff, [are] deploying

taxpayer dollars to fund the Board's illegitimate actions," and thus harming taxpayers. (Mot. at 32.) The obvious counter-assertions are that (1) the Petition for Discipline details numerous specific alleged violations of the Rules of Professional Conduct by Silverberg, and (2) if the Disciplinary Proceeding allegations against Silverberg are determined to be well founded, those proceedings will deter further harm resulting from "baseless litigation, . . . which causes resources to be squandered and is itself wrongful/unlawful." (*See Silverberg IV* Compl. ¶ 48.) Finally, it is beyond dispute that the "[t]he public has an interest in the prompt, efficient discipline of attorneys who operate outside ethical rules." *Middlesex*, 457 U.S. at 434. "The ultimate objective of such control is 'the protection of the public, the purification of the bar and the prevention of a re-occurrence.'" *Id*. (quoting *In re Baron*, 136 A.2d 873, 875 (N.J. 1975)); *see also Rose,* 2010 WL 4788491, at *2 ("The regulation of licensed attorneys by the State Bar of Utah is an important state interest, and the injury to the [d]efendants and the public that could result from the requested injunction may be substantial.").

        **B.**     ***The Younger Abstention Doctrine Precludes the Requested Relief***

        Further, it is beyond question that the *Younger* doctrine applies here and requires that we deny the Injunction Motion. The Disciplinary Proceedings are ongoing and judicial in nature; the proceedings implicate important state interests, notably Pennsylvania's interest in regulating the conduct of attorneys licensed to practice in its courts; and the proceedings afford Silverberg a forum to raise his defenses and constitutional claims. *See*, *e.g.*, *Murphy*, 2019 WL 4752059, at *14; *see also Middlesex*, 457 U.S. at 432–36; *Koresko*, 2015 WL 1312269, at *3-5; *Feingold*, 2009 WL 4857380, at *4–5.

        To the extent Silverberg seeks to avoid *Younger* by asserting that the Disciplinary Proceedings (not to mention the Tax and PUFTA Cases) represent "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate," *see Feingold*,

17

487 F. App'x at 745, this effort fails because it is founded entirely on conclusory allegations devoid of plausible factual support. *See, e.g.*, *Koresko*, 2015 WL 1312269, at *4 (the bad faith exception to *Younger* "is only appropriate . . . if the plaintiff can demonstrate bad-faith or harassment by specific evidence") (citations omitted); *Murphy*, 2019 WL 4752059, at *14 (noting that plaintiff "failed to include any plausible, non-conclusory allegation that demonstrates bad faith or harassment by the defendants"); *see also Klayman v. Porter,* No. 22-953, 2023 WL 2496738, at *7 (D.D.C. Mar. 14, 2023) (finding plaintiff's bad faith claims to be "nothing other than bald assertions concerning the defendants purported political motivations"), *appeal dismissed*, No. 23-7034, 2024 WL 137330 (D.C. Cir. Jan. 12, 2024); *Abbott v. Mette*, No. 20-131, 2021 WL 1168958, at *3 (D. Del. Mar. 26, 2021) (conclusory assertions that disciplinary charges were false and the product of a "personal vendetta" insufficient to establish bad faith), *aff'd*, No. 21-1804, 2021 WL 5906146 (3d Cir. Dec. 14, 2021).

Finally, Silverberg's assertion that the disciplinary proceedings are preempted is meritless. (*See* Mar. 7, 2024, Ltr., ECF No. 8-7 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745-46 (1983)).) Courts regularly hold that federal law does not preempt state professional disciplinary proceedings. *See Wassef v. Tibben*, 68 F.4th 1083, 1089-90 (8th Cir. 2023) (rejecting argument that state physician disciplinary proceedings were preempted by HIPAA); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993) (noting that federal disciplinary standards do not preempt states from disciplining attorneys for improper acts performed in federal courts); *Segal v. Lefebvre*, No. 13-1511, 2014 WL 1305025, at *3 (D. Nev. Mar. 31, 2014) (dismissing federal action based on *Younger* abstention and rejecting argument that ERISA preempted rule of professional conduct at issue in attorney disciplinary proceedings). The case Silverberg cites—*Bill Johnson's*—did not address the preemption argument Silverberg

18

proffers, let alone broadly hold that a federal lawsuit preempts state disciplinary or administrative proceedings pertaining to the same facts or disputes. *Bill Johnson's*, 461 U.S. at 741 (noting, in fact, that a previous Supreme Court decision construed the National Labor Relations Act "***as not preempting*** the States from providing a civil remedy for conduct touching interests 'deeply rooted in local feeling and responsibility'" (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959) (emphasis added))). Moreover, Silverberg's argument fails to acknowledge and is contrary to *Zahl v. Harper*, 282 F.3d 204, 210 (3d Cir. 2002), which rejected the argument that a state professional disciplinary proceeding was preempted by a federal statue and regulations and affirmed the district court's dismissal of federal case based on *Younger*.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction will be denied. An appropriate Order follows.


                                        **BY THE COURT:**


                                         */s/ R. Barclay Surrick*
                                        **R. BARCLAY SURRICK, J.**