# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD J. SILVERBERG | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-1868 |
| DUPONT DE NEMOURS INC. *ET AL.* | : | |

## MEMORANDUM

**SURRICK, J.**                                                                              **OCTOBER 24, 2024**

Plaintiff Richard J. Silverberg's Amended Complaint begins with the cryptic, if potentially ironic, prophecy:

> "Eventually, you reap what you sow."
>
>                    Jack McCoy

(Am. Compl., ECF No. 81, Preliminary Statement.)  This action is the third of four *pro se* lawsuits Silverberg[1] has filed in this Court against the City of Philadelphia ("City") and a host of

---

[1] Although Silverberg is proceeding *pro se*, he is an attorney currently admitted to practice law in the Commonwealth of Pennsylvania and is subject to the jurisdiction of the Disciplinary Board of the Pennsylvania Supreme Court (the "Disciplinary Board").  *See* Disciplinary Board Public Information for Richard Joseph Silverberg, available at *https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/48329* (last visited September 29, 2024)).

Silverberg is the subject of pending Disciplinary Proceedings alleging that his conduct in connection with cases discussed herein violated several Pennsylvania Rules of Professional Conduct ("RPC").  (*See* Pl.'s Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("Injunction Motion"), ECF No. 107 at 3 (incorporating Injunction Motion filed in *Silverberg v. DuPont de Nemours, Inc., et al.*, No. 24-cv-924 ("*Silverberg IV*"), ECF No. 8.)  The Disciplinary Board's Office of Disciplinary Counsel ("ODC") notified Silverberg of the Disciplinary Proceedings by letter dated March 24, 2022.  (*See* Injunction Motion Ex. A, *Silverberg IV*, ECF No. 8-1.)  On December 6, 2023, the ODC filed a 210-paragraph Petition for Discipline against Silverberg.  (*See* Petition for Discipline, Injunction Motion Exs. C-D, *Silverberg IV*, ECF Nos. 8-3, 8-4.)  A Disciplinary Board Hearing Committee ("Hearing Committee") held a hearing on May 1, 2024.  *See*, Docket, *ODC v. Richard Joseph Silverberg*, No. 172 DB 2023, available at *https://www.padisciplinaryboard.org/for-the-public/find-attorney/docket?attorneyId=48329&docketNumber=172+DB+2023* (last visited Oct. 20, 2024.)  The ODC and Silverberg submitted their post-hearing briefs on July 1, 2024, and August 9, 2024, respectively.  *Id.*  On October 9, 2024, the ODC Hearing Committee issued its Report and Recommendation, concluding that Silverberg "has violated the Rules of Professional Conduct" and recommending that he "be suspended from the practice of law for five years."  *See* ODC Hr'g Comm. R&R at 1, available at *https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/48329/silverberg-richard-joseph?tab=pending* (last visited Oct. 10, 2024).

other defendants alleging claims under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state common law challenging one or both of the tax-related judgments entered against him in the Philadelphia County Court of Common Pleas (the "State Court") in *City of Phila. v. Richard J. Silverberg & Assoc., PC, et al.*, No. 080301510 (the "Tax Case") and *City of Philadelphia v. Richard J. Silverberg et al.*, No. 190903805 (the "PUFTA Case") (collectively, the "Tax/PUFTA Cases").[2]

In this action, Silverberg names as Defendants the following entities and individuals:[3] the City, former City Mayor James Kenney, former City Solicitor Marcel S. Pratt, former City Solicitor Diana Cortes, Divisional Deputy City Solicitor Marissa O'Connell, and former Deputy City Solicitor Brian R. Cullin (collectively, the "City Defendants"); DuPont de Nemours, Inc. ("DuPont") and former DuPont and DowDuPont executive Edward Breen; Dow, Inc. ("Dow") and former Dow and DowDuPont executive Andrew Liveris; Corteva, Inc. ("Corteva"); International Flavors & Fragrances, Inc. ("IFF") and IFF executive Andreas Fibig; Avantor, Inc. ("Avantor") and Avantor Chairman and former Rohm & Haas Company executive Rajiv Gupta; Liberty Mutual Group, Inc. ("Liberty") and Liberty executive David H. Long; The Vanguard Group, Inc. ("Vanguard") and Vanguard executive Timothy Buckley; William Penn Foundation ("William Penn") and William Penn Board Chair Janet Haas; Ballard Spahr LLP ("Ballard"); and, Gellert Scali Busenkell & Brown LLC ("Gellert Scali") and Gellert Scali partner Gary F. Seitz.  (Am. Compl. ¶¶ 2-25, 28-4.)

---

[2] PUFTA refers to the Pennsylvania Uniform Voidable Transactions Act, formerly known as the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Stat. and Cons. Stat. Ann. § 5101, *et seq.*

[3] Individual Defendants are referred to hereinafter by their last names.

The Amended Complaint asserts the following claims:  Violation of Constitutional Rights (First Amendment right to free speech/petition and Fourteenth Amendment due process), 42 U.S.C. § 1983 (Count I); RICO—Obstruction of Justice/Interference with Commerce, 18 U.S.C. §§ 1962(c), 1951 (Count II); RICO—Obstruction of Justice, 18 U.S.C. §§ 1962(c), 1512(b)-(d) (Count III); RICO—Obstruction of Justice, 18 U.S.C. §§ 1962(c), 1503 (Count IV); RICO— Mail/Wire Fraud, 18 U.S.C. §§ 1961, 1341, 1343 (Count V); RICO—Conspiracy, 18 U.S.C. §§ 1961, 1962(d) (Count VI); Retaliation, 42 U.S.C. § 1983 (Count VII); Abuse of Process (Count VIII); Fraud (Count IX); Tortious Interference with Business Relations (Count X); Conversion (Count XI); Intentional Infliction of Emotional Distress (Count XII); and Civil Conspiracy (Count XIII).  Counts I and VII are asserted only against the City Defendants, Gellert Scali, and Seitz, and the remaining Counts are alleged against all Defendants.  (Am. Compl. ¶¶ 338-93.)

Silverberg's Amended Complaint is a byzantine and prolix tome that runs 117 pages (including 67 footnotes) and contains 393 paragraphs, 337 of which are the factual allegations offered in support of the asserted causes of action.  All named Defendants filed Motions to Dismiss the Amended Complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine and on several other grounds.  (ECF Nos. 83-94.)  Silverberg filed a Response to the City Defendants' Motion to Dismiss (ECF No. 95), which he incorporated as his Response to the other Defendants' Motions.  (ECF Nos. 96-106.)  On September 30, 2024, we issued an Order granting Defendants' Motions and dismissing Silverberg's Amended Complaint, and all claims asserted therein, against all Defendants with prejudice.  (ECF No. 171.)   This Memorandum sets forth the background and analysis supporting our September 30, 2024 Order.[4]

---

[4] Although this action ("*Silverberg III*") has been consolidated for pretrial purposes with *Silverberg IV* (*see* ECF No. 111, ¶ 1), our September 30, 2024 Order ruled only on the Motions to Dismiss filed in *Silverberg III*.  We will separately address the Amended Complaint and pending motions to dismiss in *Silverberg IV*.

I.      **BACKGROUND**[5]

In this latest action, Silverberg purports to base his claims on a new theory—an

implausibly expansive and enduring alleged conspiracy among Defendants to conduct a "proxy

war" against him to prevent him from publishing his "anticipated"—*but as-yet hypothetical*—

book about what he calls "the *Jackson* odyssey" and "to retaliate against [him] for engaging in

protected activity."  (Am. Compl. ¶ 47.)  As burdensome as they are to digest, however, the

tangled web of "proxy war" allegations outlined below do not obscure the fact that this action is

yet another, if more imaginative, repackaged effort to circumvent the State Court judgments

against him in the Tax/PUFTA Cases.

A.      **The *Jackson* Odyssey**

The *Jackson* Odyssey refers to lawsuits Silverberg pursued in state and federal court as

counsel for Mark Jackson ("Jackson") from 1999 until approximately 2010.  (*See*, *e.g.*, Am.

Compl. ¶¶ 45-59, 74-81, 88-94.)  Silverberg filed the first of those lawsuits on June 17, 1999,

alleging invasion of privacy, intentional infliction of emotional distress, and civil conspiracy

claims against Jackson's former employer, Rohm & Haas, and other Rohm & Haas personnel,

*see Jackson v. Rohm & Haas et al.*, No. 990601906 (Phila. Cty. Ct. Com. Pl.) ("*Rohm & Haas*

State Case").  On July 1, 1999, Silverberg filed a separate but related state court lawsuit on

Jackson's behalf against a female former Rohm & Haas co-worker.  *See Jackson v. McCrory*,

No. 990601906 (Phila. Cty. Ct. Com. Pl.) ("*McCrory* State Case").  On August 31, 2000, the

---

[5] We may take judicial notice of matters of public record, including docket sheets, and have done so in recounting certain facts pertinent to the background of this matter.  *See*, *e.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (in evaluating a motion to dismiss, court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case" (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))).

*Rohm & Haas* State Case and the *McCrory* State Case were consolidated (the "Consolidated State Cases."). *See McCrory* State Case docket, No. 990601906, available at *https:// fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames* (last visited September 29, 2024). Silverberg ultimately did not prevail in these cases, and all appeals were exhausted in 2004. *See Jackson v. Rohm & Haas Co. et al.*, 56 Pa. D. & C. 4th 449, 450 (Phila. Cty. Ct. Com. Pl. 2002), *aff'd*, No. 1710 EDA 2002 (Pa. Super. Ct. July 31, 2003), *reh'g denied* (Oct. 1, 2003), *appeal denied*, No. 540 EAL 2003 (Pa. May 4, 2004).

On September 19, 2003, while his petition for allowance of appeal in the Consolidated State Cases was pending, Silverberg filed a federal lawsuit on behalf of Jackson against Rohm & Haas, certain Rohm & Haas employees, and their state court lawyers, asserting RICO and pendant state law claims. *See Jackson v. Rohm & Haas Co. et al.*, No. 03-5299, 2005 WL 1592910, at *1-3 (E.D. Pa. June 30, 2005) (Pollak, J.) ("*Jackson I*") (setting forth background of Consolidated State Cases and *Jackson I*), *aff'd*, No. 06-1540, 2007 WL 579662 (3d Cir. Feb. 26, 2007). The district court dismissed Jackson's Amended Complaint, finding that he lacked standing to bring RICO claims and declining to exercise supplemental jurisdiction over his state law claims. *Id.* at *4-5.

On September 19, 2005, Silverberg filed another federal lawsuit alleging that the *Jackson I* defendants, their *Jackson I* lawyers, and Rohm & Haas's disability insurance administrator engaged in improper conduct in connection with *Jackson I*. *See Jackson v. Rohm & Haas Co.*, No. 05-4988, 2006 WL 680933 (E.D. Pa. Mar. 9, 2006) ("*Jackson II*"), *aff'd*, 366 F. App'x 342 (3d Cir. 2010), *cert. denied*, 562 U.S. 840 (2010). The defendants moved to dismiss the complaint and for sanctions based on that pleading, Jackson filed an amended complaint, and the court sanctioned Silverberg, finding the complaint's claims under RICO and 42 U.S.C. § 1985

were "unwarranted and frivolous." *Id.* at *5-6.  Silverberg later filed a second amended

complaint on behalf of Jackson, five claims of which ultimately survived dismissal.  *Jackson II*,

2007 WL 2702804, at *8 (E.D. Pa. Sept. 12, 2007) (denying motion to dismiss two RICO counts

and three counts under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§

1002 *et seq.*).

      On August 18, 2006, while *Jackson II* was pending, Silverberg filed a third federal

action, adding claims relating to the termination of Jackson's employment and disability benefits.

*See Jackson v. Rohm & Haas Co.*, No. 06–3682, 2007 WL 2668001 (E.D. Pa. Sept. 5, 2007)

("*Jackson III*").  The court dismissed most of the claims alleged in the original *Jackson III*

complaint.  *Id.* at *14 (dismissing all counts except one ERISA claim and two state-law claims),

*modified in part*, 2007 WL 2702797, at *2 (E.D. Pa. Sept. 12, 2007) (dismissing the two state-

law claims as to one defendant).  The court later consolidated *Jackson II* and *III* and ordered

plaintiff to file a consolidated amended complaint, which must "alleg[e] all claims for which he

has a good faith basis" and "must be concise and . . . comply with all federal and local rules."

*See Jackson III*, at ECF No. 93 (E.D. Pa. May 22, 2008) (consolidating cases under *Jackson II,

Case* No. 05-4988).  On March 19, 2009, the court ordered 21 of 25 claims asserted in the 152-

page consolidated amended complaint dismissed with prejudice "as a sanction for, *inter alia*,

[plaintiff's] continuing failure to file a properly-pleaded complaint and his chronic obstinacy

regarding the court's orders and decisions."[6]  *Jackson II*, 2009 WL 773936, at *1-2 (E.D. Pa.

Mar. 19, 2009), *aff'd*, 366 F. App'x 342 (3d Cir. 2010), *cert. denied*, 562 U.S. 840 (2010).

---

      [6] On September 28, 2012, the district court ordered *Jackson II* closed for statistical purposes, concluding that all claims in Jackson's consolidated amended complaint had been dismissed or abandoned.  *See Jackson II*, ECF No. 269.

**B.     The State Court Judgments**[7]

     *1.     The Tax Case*

In March 2008, the City filed its complaint in the Tax Case, seeking a judgment against

Silverberg and his former law firm, Silverberg, P.C., for unpaid business privilege and wage

taxes, plus penalties and interest, for certain periods between 1992 and 2004.  (Am. Compl. ¶ 46

n.7.)  *See Silverberg v. City of Philadelphia*, No. 19-2691, 2019 WL 4059015, at *1 (E.D. Pa.

Aug. 27, 2019) ("*Silverberg I*") (summarizing background of Tax Case); *see also* Tax Case

docket, No.  080301510, available at *https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dkt*

*rpt_frames?case_id=080301510&uid=FgmLJisVvIolqsSYDxam&o=LisZDSilP!rzHdb* (last

visited October 4, 2024).  Silverberg and his firm did not respond to the City's complaint, and,

on June 3, 2008, the State Court entered a default judgment in the amount of $310,586.53 against

Silverberg and Silverberg, P.C.  *See Silverberg I*, 2019 WL 4059015, at *1.  On or about

September 25, 2008, the City filed a Praecipe for Writ of Execution in Attachment against

Silverberg P.C.'s banks, Commerce Bank and Wachovia Bank, and the Writ was then served on

the banks by the Sheriff.  *Id.* at *2.  On or about October 22, and November 8, 2008, the City

dissolved the Writs against Commerce Bank and Wachovia Bank, respectively. *Id.*  On June 3,

2013, the City filed a Suggestion of Non-payment, pursuant to 53 Pa. Stat. Ann. § 7183, to

continue its lien.  *Id.*

     On July 16, 2017, after the City's counsel advised Silverberg that the City would take

action to collect the Tax Case judgment, Silverberg filed a Motion for Judgment of Non Pros, or

in the Alternative, to Enjoin Enforcement of the Judgment (the "Non Pros Motion"), contending

---

[7] Silverberg's Amended Complaint incorporates by reference the Tax/PUFTA Cases (*see* Am. Compl. ¶ 47 n.7-8) and includes numerous allegations summarizing, characterizing, and/or selectively quoting from those proceedings and the parties' communications therein.  (*See*, *e.g.*, *id.* ¶¶ 188-89, 214-24, 228-31, 234-38, 242-47, 266-67, 270, 272.)

that the City's inaction from 2008 until 2017 constituted a "lack of due diligence" and failure to "proceed with reasonable promptitude." *Id.* The State Court denied Silverberg's Motion, and the Commonwealth Court of Pennsylvania affirmed. *See City of Phila. v. Richard J. Silverberg & Assoc., P.C.*, No. 1783 C.D. 2017, 2019 WL 1502343 (Pa. Commw. Ct. Apr. 4, 2019). On November 19, 2019, the Pennsylvania Supreme Court denied Silverberg's petition for allowance of appeal. *City of Philadelphia v. Richard J. Silverberg & Assocs., P.C.*, 656 Pa. 211 (2019).

### 2. The PUFTA Case

On October 1, 2019, the City filed a complaint in the State Court against Silverberg and ELS Realco, LLC ("ELS"), alleging that they engaged in a fraudulent transfer in connection with ELS's December 2011 purchase of real property at 2101 Market Street ("2101 Market Property") with the intent to "hinder, delay, and/or defraud" the City in its efforts to collect the unpaid Tax Case judgment. (*See*, *e.g.*, Am. Compl.¶¶ 234-37.) *See also* PUFTA Case Compl. ¶¶ 1-4, 8-9, 14-16, 19-27. [8] Specifically, the City alleged that in November 2011, after entry of the Tax Case judgment, Silverberg established ELS as a Delaware limited liability company of which he is the sole member. *See* PUFTA Case Compl. ¶¶ 3-4, 9. The City further alleged that during 2011, Silverberg transferred to ELS substantially all his assets, including money, which ELS used to purchase the 2101 Market Property for $618,000 in December 2011, and that Silverberg was or became insolvent because of this transfer. *Id.* ¶¶ 15-16, 23-25.

On November 10, 2020, the State Court entered default judgments against Silverberg and ELS in the PUFTA Case. *See* PUFTA Case docket, Nov. 12, 2020, 7:42 a.m. and 7:49 a.m. entries. On December 4, 2020, Silverberg and ELS filed a notice of appeal of the default

---

[8] The PUFTA Case docket and filings therein are available at: *https://fjdefile.phila.gov/ efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames?case_id=190903805&uid=x5kVTmgOAIolqsSYDxam&o= B7q9NW6eW!rzHdb* (last visited Oct. 4, 2024).

judgments.  *See id.*, Dec. 4, 2020, 9:06 a.m. entry; *see also City of Philadelphia v. Silverberg, et al.*, No. 1284 CD 2020 (Pa. Commw. Ct.) ("PUFTA Appeal"), available at *https://ujsportal.pacourts.us/Report/PacDocketSheet?DocketNumber=1284%20CD202020&dnh =lgyVyHt4klgQnmZohGeRhQ%3D%3D* (last visited Oct. 4, 2024).  Between March 9 and April 22, 2021, Silverberg filed an emergency application, amended emergency application, and second amended emergency application for special relief in the PUFTA Appeal, all seeking a TRO and/or preliminary injunction, or, alternatively, a stay of the PUFTA proceedings.  *Id.*  On April 27, 2021, the Commonwealth Court denied all three emergency applications.  Silverberg withdrew the PUFTA Appeal on May 10, 2021.  *Id.*  On October 29, 2021, the State Court appointed Seitz as sequestrator in the PUFTA Case.  *See* PUFTA Case docket, Nov. 2, 2021, 9:53 a.m. entry.  On January 11, 2022, the State Court issued an order directing Silverberg to remove himself and his property from the 2101 Market Property and authorizing the sequestrator to take control of the premises.  *Id.*, Jan. 11, 2022, 2:57 p.m. entry.

### C.    *Silverberg I* and *Silverberg II*

On June 20, 2019, while his petition for allowance of appeal in the Tax Case was pending before the Pennsylvania Supreme Court, Silverberg filed the *Silverberg I* lawsuit in this Court against the City, Kenney, Pratt, Cortes, O'Connell, Cullin, and others,[9] alleging that they engaged in unlawful tax collection practices in the Tax Case in violation of RICO, and state common law.  *See Silverberg I,* 2020 WL 108619, at *1 (E.D. Pa. Jan. 8, 2020) ("*Silverberg I*"), *aff'd*, 847 F. App'x 152 (3d Cir. 2021).  Silverberg also filed a motion for a TRO and

---

[9] Also named as defendants in *Silverberg I* were Frank Breslin, City Revenue Commissioner-Chief Collections Officer; Kelly Diffily, City Law Department Senior Attorney, Appeals Unit; the law firm Linebarger Goggen Blair & Simpson, LLP ("Linebarger"), outside counsel to the City; and Christopher W. Dean, an attorney with Linebarger.  *See* Compl., *Silverberg I*, ECF No. 1, ¶¶ 14, 17, 21, 22.

preliminary injunction, which we denied in a Memorandum and Order after holding a hearing. *Silverberg I*, 2019 WL 4059015, at *3.

After defendants filed motions to dismiss the complaint, Silverberg filed an amended complaint, and defendants again filed motions to dismiss.  *See Silverberg I*, ECF Nos. 14, 19, 23, 27.  The 12-count amended complaint in *Silverberg I* asserted § 1983, RICO, and state law claims that are nearly identical to those he now asserts in *Silverberg III*.  *Compare Silverberg I* Am. Compl. Cts. I-IX, XI, XII *with Silverberg III* Am. Compl. Cts. I-IX, XII, XIII.  The claims in *Silverberg I* also alleged a conspiracy that is notably similar to—if substantially narrower than—Silverberg's current "proxy war" theory and is based on many of the same underlying factual allegations.  *Compare, e.g., Silverberg I* Am. Compl. ¶¶ 65-67, 71-75, 83-84, 86, 90, 92-93, 101-05 (allegations regarding City collection efforts in Tax Case) and ¶¶ 47-48, 53-61 (allegations regarding William Penn and the City "Rebuild" initiative) *with Silverberg III* Am. Compl. ¶¶ 214-24, 228-31 and 197-202, 204.  According to the *Silverberg I* theory, the City did not pursue collection of the Tax Case judgment for a legitimate purpose but to, among other things, "threaten, harass, intimidate and retaliate against [Silverberg] for the exercise of a federal right" and deter him from taking any action that would implicate or jeopardize the City's tax practices and its beverage tax and Rebuild initiatives.  *See, e.g.*, *Silverberg I* Am. Compl. ¶ 90. On January 8, 2020, we dismissed the *Silverberg I* amended complaint based on the *Rooker-Feldman* and *Younger* doctrines and principles of comity.  *Silverberg I*, 2020 WL 108619, at *5-7.

On October 12, 2020, eleven days after the City filed the PUFTA Case, Silverberg filed a second federal lawsuit against the *Silverberg I* defendants, William Penn, Haas, and a former City Managing Director, this time alleging unlawful conduct in connection with both the Tax and

PUFTA Cases.  *See Silverberg et al. v. City of Philadelphia et al.*, No. 20-5034 ("*Silverberg II*"), Compl., ECF No. 1.  On January 19, 2021, Silverberg filed an amended complaint, also naming as a defendant Philadelphia Court of Common Pleas Judge Joshua Roberts, who presided over certain proceedings in the PUFTA Case.  *See id.*, Am. Compl., ECF No. 14, ¶¶ 14, 29.

The *Silverberg II* amended complaint was premised on essentially the same theory and alleged injury as *Silverberg I* and restated many of its allegations regarding the Tax Case, the City's collection efforts, the City beverage tax, and its Rebuild initiative and William Penn's role therein.  *Id.* ¶¶ 33-38, 54-68, 72-83, 92-113, 172-88.  The *Silverberg II* amended complaint, however, added extensive allegations regarding the PUFTA Case, *see id.* ¶¶ 118-71, including numerous allegations that Judge Roberts engaged in improper and illegitimate conduct in those proceedings.  *See, e.g., id.* ¶¶ 134, 137-38, 149, 154, 160, 163, 166, 171, 187, 204, 244-45, 260.[10] *Id.* ¶¶ 118-71.  The amended complaint asserted the same § 1983, RICO, and state law claims as in *Silverberg I.  Id.*, Cts. I, III, IV, VII, IX, XI, XIII, XV, XVII, XIX, XXI-XXII.  However, it also separately asserted aiding and abetting claims against Judge Roberts with respect to the § 1983 and RICO claims and three of the state law claims.  *Id.*, Cts. II, IV, VI, VIII, X, XII, XIV, XVI, XVIII, XX.

On February 8, 2021, Silverberg filed a motion for TRO and/or preliminary injunction in *Silverberg II*, requesting that this Court enjoin further proceedings in the Tax/PUFTA Cases. *Silverberg II*, ECF No. 15.  The same day, the City defendants filed a motion for sanctions against Silverberg, who filed a response on February 16, 2021.  *Id.*, ECF Nos. 17, 21. Silverberg voluntarily dismissed *Silverberg II* on February 23, 2021.  *Id.*, ECF No. 30.

---

[10] The ODC Hearing Committee R&R includes a finding that Silverberg violated RPC 3.1, 3.3(a)(1), 8.2(a), and 8.4(c) when he impugned the integrity of Judge Roberts in pleadings and correspondence in the Tax/PUFTA Cases and *Silverberg II*.  *See* ODC Hr'g Comm. R&R at 37.

### D.     The Pending "Proxy War" Litigation—*Silverberg III* and *IV*

####     3.     *Silverberg III*

On May 17, 2023, Silverberg initiated the above-captioned case—*Silverberg III*—with a 13-count, 163-page, 518-paragraph Complaint.  (Compl., ECF No. 1.)  In addition to the 24 Defendants (and 15 John Does) named in the Amended Complaint, Silverberg's initial Complaint also named as Defendants Judge Roberts and Judge Daniel J. Anders, the State Court judge who denied Silverberg's Non Pros Motion in the Tax Case.  (*Id.* ¶¶ 20-21, 37-38.)  On September 25, 2023, Silverberg filed the Amended Complaint, which dropped Judges Roberts and Anders as Defendants and omitted the references to and allegations about the judges that were contained in the original Complaint. [11]  (*See generally,* Am. Compl., ECF No. 81.)

Silverberg's claims in *Silverberg I* and *II* were based on the theory that the defendants' individual and collective actions in connection with the Tax/PUFTA Cases had no legitimate purpose but were undertaken for unlawful or improper reasons to further defendants' interests at Silverberg's expense.  The *Silverberg III* claims are premised on a modified and expanded version of the same essential theory.  The Amended Complaint here merely repackages the previous claims in a litany of marginally comprehensible allegations of an even more expansive and improbable conspiracy, now labeled the "proxy war."  We will not undertake the onerous task of summarizing Silverberg's allegations regarding each Defendant's connection to the "proxy war," as they are largely conclusory and yet littered with scores of dubiously relevant details.  Instead, we outline the core allegations of Silverberg's claims, beginning with those set forth under the heading "The Proxy War – A Brief Introduction."  (Am. Compl. ¶¶ 45-50.)

---

[11] The Amended Complaint asserts the same causes of action as the initial Complaint, except for Count XI, which originally alleged negligent misrepresentation.  (Compl., ECF No. 1.)

According to Silverberg, the "proxy war" resulted from the following email sent by him on April 22, 2016, to counsel for certain defendants in the *Jackson* Odyssey litigation, including Dow, DuPont, Corteva, and Liberty Mutual:

> It seems like a good time to let you and others know that I will soon be completing my book concerning the Jackson odyssey.  As I expected, this project has generated great interest since the cases are a window into a complex and disturbing aspect of corporate America, the conduct of corporate officials and corporate counsel, and our broken justice system. While the book examines the underlying conduct it also explores the business judgment, legal and strategic decisions, individual actions, and judicial proceedings that cumulatively led to and killed-off multiple causes of action.

(*Id*. ¶ 45.)  Silverberg alleges that since he sent that email, the City has "filed and/or actively pursued" the Tax/PUFTA Cases and, according to the City, the purpose of filing/pursuing [those] claims was to recover past-due taxes that supposedly were due and owing."  (*Id*. ¶ 46.)  The Amended Complaint further avers that the Tax/PUFTA Cases were not filed for this purpose, alleging that "the City's various actions have revealed" that it has pursued those Cases "as part of a 'proxy war' on behalf of (and for the benefit) of certain third parties including [D]efendants Dow, DuPont, Corteva, and Liberty Mutual, their predecessors/successors, affiliates, certain individuals, and/or others. . . ."  (*Id*. ¶ 47.)  The "proxy war" allegedly "also has included a malicious smear campaign, predicated upon knowing and/or manufactured falsehoods, intended to damage/destroy plaintiff's professional and personal reputation, and which has included the filing of baseless Complaints with the Disciplinary Board of the Supreme Court of Pennsylvania."  (*Id*. ¶ 48.)  Silverberg alleges that the purposes of the "proxy war," are to "delay, deter, dissuade, and/or prevent" him from publishing or disseminating his "anticipated" book about the *Jackson* Odyssey or "any account . . . of the subject matter of the book, and/or any related claims in connection with defendants' wrongful/unlawful activities"; "to retaliate against [him] for engaging in protected activity"; and—ironically given his litigation history—"to

entangle [him] in baseless litigation, a not uncommon tactic by certain abusers, which causes resources to be squandered and is itself wrongful/unlawful." (*Id.* ¶ 49.)

While this introduction to the "proxy war" is indeed brief, the ensuing "Factual Allegations" are the antithesis of both brevity and clarity.[12]  They begin with 125 paragraphs under the heading "The Reasons for the Proxy War," with subheadings for the 19 alleged "Reasons" plus two sub-subheadings under "Reason #17."  (*Id.* ¶¶ 51-176.)  The "Reasons" are a compilation of largely conclusory and entirely bewildering allegations about Defendants' purported roles in, and the "implications of," dozens of facially disparate instances of alleged wrongful or unlawful conduct—spanning more than two decades from 1999 to 2021.  The Amended Complaint alleges wrongful/unlawful conduct in connection with such seemingly unrelated matters as the *Jackson* Odyssey litigation (*see, e.g.*, ¶¶ 51-64, 74-106), the Rohm & Haas long-term disability plan (*id.* ¶¶ 65-73), the Haas Family Trusts' sale of Rohm & Haas to Dow (*id.* ¶¶ 107-31), the creation of DowDuPont (*id.* ¶¶ 132-45), Gupta's appointment to the Board of DuPont (*id.* ¶¶ 146-50), IFF's acquisition of Frutarom (*id.* ¶¶ 153-56), DuPont's transactions with IFF (*id.* ¶¶ 151-52, 157-64), financing of the alleged transactions (*id.* ¶¶ 165-67), and Vanguard's actions relating to a writ of execution issued in the PUFTA Case (*id.* ¶¶ 168-76).

Then, after 17 conclusory assertions summarizing Silverberg's theory as to the impetus for, and strategy and purposes of, the "proxy war" (*id.* ¶¶ 177-93), the Amended Complaint proceeds with more than 140 paragraphs alleging how and why the various Defendants

---

[12] According to Silverberg, comprehension of "the reasons for the proxy war" requires, first, "an understanding of the wrongful/unlawful actions that are the subject of plaintiff's anticipated book, the potential consequences of those actions, defendants' apparent beliefs/perceptions concerning the related risks/exposures, and the relationship(s) between those who conceived the proxy war and those who actually carried it out." (*Id.* ¶ 50.)  Many of the allegations on these subjects are made on information and belief.  (*See id.* ¶¶ 109, 131, 136, 149, 151, 162, 167, 181, 184-85, 202, 212, 307-08, 310, 314-16.)

collectively pursued the "proxy war" disguised as a City effort to recover past due taxes.  (*id.* ¶¶ 194-337; *see also id.* ¶¶ 187-90.)  While this recitation includes some historical facts about William Penn, the City Rebuild initiative, and Pratt's employment history with the City and Ballard (*see*, *e.g.*, *id.* ¶¶ 195-96, 197-98, 201, 205-07, 209-10), as well as a few unembellished descriptions of selected filings in the Tax/PUFTA Cases and *Silverberg I* and *II* (*see*, *e.g.*, *id.* ¶¶ 225, 233, 242), most of the allegations are unsupported, conclusory descriptions and characterizations of Defendants' actions, statements, and alleged intent in relation to those proceedings, and *ipse dixit* assertions that the Tax/PUFTA Cases are merely instruments of the "proxy war."  (*See*, *e.g.*, *id.* ¶¶ 194-95, 202-03, 211-13, 215-16, 221-22, 224, 230, 237, 239-40, 248-52, 254, 259-61, 267-69, 271, 278-79, 283, 289, 293, 294-303, 307, 313-316, 318-19, 321, 323, 330-32, 337.)

To the extent the "factual" allegations can be coherently distilled to the essence of the "proxy war" theory, it proceeds as follows:

(1) In response to Silverberg's April 22, 2016 email and follow-up emails about his "anticipated" book, certain Defendants, including "Core Defendants" Gupta, Breen, Liveris, Long, and Haas and/or others, and their affiliates decided to take action against him and formulated a strategy which required that their actions have the actual or apparent authorization/ratification of "the Core Defendants themselves and/or their authorized representatives."

(2) To prevent Silverberg from publishing his book or disseminating any information related to Defendants' "wrongful/unlawful activities," the Core Defendants decided to conduct an "illegitimate proxy war" against Silverberg and ELS through the City and its lawyers.

(3) This "'proxy war' – which *primarily consisted of activities in connection with the filing/pursuit of the Tax/PUFTA matters* – reflected the Core Defendants' recognition and fear concerning the true extent of their wrongful/unlawful actions" and the related risks and consequences if their actions were exposed.

(4) Because exposure of their actions would pose professional and reputational risks to the Core Defendants, their decision to pursue the "proxy war" through the City Defendants and Gellert Scali was "central to the Core Defendants' overall strategy" to not be directly involved in the "proxy war," which would be conducted instead

by third parties whose unlawful activities would appear legitimate and "defensible."

(5) In furtherance of this "overall strategy," *the City and City Defendants have filed and pursued the Tax/PUFTA Cases* "*under the guise of seeking to recover past due taxes that supposedly were due and owing*," when those actions "have[] nothing to do with taxes or the City more generally" and were actually undertaken and ratified by or on behalf of Defendants, all of whom were members of an "enterprise" or conspiracy, in furtherance of the "proxy war" and its alleged purposes.

(*See id*. ¶¶ 181-93 (emphasis added).)

Silverberg alleges that Defendants' actions in connection with the "proxy war"—specifically, the filing and pursuit of the Tax/PUFTA Cases—have caused him to suffer personal injuries and damage to or loss of his property and personal and professional reputation. (*See id.* ¶¶ 340-41, 345, 347-48, 351-53, 355.) As relief, Counts I and II of the Amended Complaint demand compensatory and/or economic damages; punitive, liquidated, and/or treble damages; injunctive relief against further similar conduct and violations of Silverberg's rights; and all other available and appropriate legal and equitable relief, including fines, penalties, attorney's fees, interest, and costs. (*Id.* ¶¶ 348, 356.) The wherefore clauses of all counts demand judgment in an amount exceeding $150,000 against all Defendants, jointly and severally.

### 4. *Silverberg IV*

Silverberg filed the *Silverberg IV* Complaint on March 4, 2024. (*See* Compl., *Silverberg IV*, ECF No. 1.) The Complaint asserted eleven claims essentially identical to those asserted in *Silverberg III*; named the same Defendants as the initial *Silverberg III* Complaint, including Judges Roberts and Anders, (*id.* ¶¶ 29, 30, 36, 37); and additionally named as Defendants the ODC, ODC Chief Disciplinary Counsel Thomas J. Farrell, and Disciplinary Counsel Richard Hernandez. (*Id.* ¶¶ 13, 27, 28, 33, 35.) On March 15, 2024, Silverberg filed the Injunction Motion asking this Court to enjoin the Disciplinary Proceedings. (*See Silverberg IV*, ECF No. 8.) We denied the Injunction Motion in a Memorandum and Order issued April 2, 2024. (*Id.*,

ECF Nos. 24, 25.)  Silverberg's appeal of that ruling is pending before the Third Circuit Court of Appeals.  (*Id.*, ECF No. 48; *see also* No. 24-1775 (3d Cir.).)

On May 13, 2024, after all Defendants filed motions to dismiss the Complaint (*id.*, ECF Nos. 51-62), Silverberg filed an Amended Complaint.  (ECF No. 64.)  The Amended Complaint asserts the same eleven counts as the Complaint and adds a claim for defamation (Count X) against all Defendants.  (*Id.* ¶¶ 109-160.)  The Amended Complaint restates verbatim or in substance several allegations from *Silverberg II* and *III* and incorporates the *Silverberg III* Amended Complaint in full.  (*See id.* ¶¶ 41-58.)  However, the *Silverberg IV* Amended Complaint also includes extensive allegations about the Disciplinary Proceedings, including assertions that the ODC and its officials are among the ever-expanding cast of conspirators perpetrating the allegedly ongoing "proxy war," that the Disciplinary Proceedings are preempted by *Silverberg III*, that the allegations of misconduct against Silverberg lack foundation, and that the ODC did not conduct a "proper/legitimate" investigation.  (*See*, *e.g.*, *id.* ¶¶ 59-97.)

All Defendants again filed motions to dismiss the Amended Complaint (*id.*, ECF Nos. 66-76, 78), to which Silverberg filed responses.  (*Id.*, ECF Nos. 83-95.)  On August 30, 2024, Silverberg filed a motion for partial summary judgment as to Counts I, VII, VIII, and IX against Judges Roberts and Anders, the ODC, Farrell, and Hernandez.  (*Id.*, ECF No. 96.)  On September 3, 2024, Silverberg filed a second motion for summary judgment as to Counts I, II, and V-X against the City Defendants, Vanguard, Gellert Scali, and Seitz.[13]  (*Id.*, ECF No. 97.)  These Defendants filed oppositions to the motions for partial summary judgment (*id.*, ECF Nos. 99, 101-04), and Silverberg filed replies in support of the motions.  (*Id.*, ECF Nos. 106-110.)

---

[13] Silverberg's first and second motions for partial summary judgment, with exhibits, total 369 pages and 452 pages, respectively.  (*See*, *id.,* ECF Nos. 96, 97.)

Defendants' motions to dismiss the Amended Complaint and Silverberg's motions for partial summary judgment are pending before this Court.

## II.    LEGAL STANDARDS

### A.    Dismissal For Lack of Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a "facial" or "factual" challenge. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. . . ." *Id*. at 358. A facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Id.* Thus, in reviewing a facial challenge, the court considers, in the light most favorable to the plaintiff, the allegations in the complaint and any documents referenced and attached to the complaint. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *see also Medici v. Pocono Mountain Sch. Dist.*, No. 09-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010) (observing that in deciding a facial attack, the court may only consider the allegations contained in and exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents identified by plaintiff as a basis of his claims and which the defendant has attached to a motion to dismiss.) Further, while the court must accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences therefrom in plaintiff's favor, "'[t]hreadbare recitals of the elements of [jurisdiction], supported by mere conclusory statements, do not suffice[,]'" and will be disregarded. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

"A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id*.  When evaluating a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Braun v. Philadelphia Inquirer, LLC*, No. 22-4185, 2023 WL 7544160, at *2 (E.D. Pa. Nov. 13, 2023) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  "No presumption of truth attaches to the plaintiff's allegations in a factual challenge and 'the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.*  "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff [bears] the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991).

### B.      Sufficiency of Pleadings Under Fed. R. Civ. P. 8, 9(b), and 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Rule 8 further states that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules."[14]  *In re Westinghouse Secs. Litig*., 90 F.3d 696, 702 (3d Cir. 1996) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217

---

[14] Complaints that constitute "shotgun pleadings" are among those that violate Rule 8.  *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).  "The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints," which is contrary to the mandates of Rule 8(a)(2). *See id.* (quoting *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031, n.13 (3d Cir. 1988)).  The Court of Appeals for the Eleventh Circuit has produced much of the caselaw addressing shotgun pleadings, and "district courts within the Third Circuit often cite to the Eleventh Circuit for this law." *Id.* at 859, n.3; *see Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320-1323 (11th Cir. 2015).  Among the four categories of shotgun pleadings are complaints that "contain[] multiple counts where each count adopts the allegations of all preceding counts" and those that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1321-23; *see also Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland* categorization of shotgun pleadings).

at 169 (2d ed. 1990)).  The complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Alleged claims that rely on nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor will "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Id*. at 555, 557.

In addition, fraud claims are subject to the heightened pleading requirement of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Where a RICO claim is predicated on mail or wire fraud, those acts are subject to the heightened requirements of Federal Rule of Civil Procedure 9(b).  *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plaintiffs may plead allegations based upon information and belief, "so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'"  *McDermott v. Clondalkin Group, Inc*., 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig*., 311 F.3d 198, 216 (3d Cir. 2002)).  Under the Rule 12(b)(6) standard, a court must accept a

complaint's well-pleaded factual allegations as true, but "legal conclusions couched as factual allegations, conclusory factual allegations, and threadbare recitations of a cause of action are insufficient to state a facially plausible claim." *Iqbal*, 556 U.S. at 678-79.  Under Rule 12(b)(6), "a complaint must be dismissed if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, the complaint fails to show that the plaintiff has a plausible claim for relief." *Swope v. Northumberland Nat. Bank*, No. 14-4020, 2015 WL 4591794, at *2 (3d Cir. July 30, 2015) (internal quotation marks and citation omitted).

## III.   DISCUSSION[15]

### A.   The *Rooker-Feldman* Doctrine Precludes the Exercise of Subject Matter Jurisdiction over Plaintiff's Claims

#### 1.   Standard of Review Applied

As noted above, motions to dismiss under Rule 12(b)(1) may present a facial or a factual challenge to subject matter jurisdiction.  The City Defendants take the position that "[p]rinciples of comity, and the *Rooker-Feldman* doctrine raise factual challenges."  (*See* City Defs.' Mot. at 17 (citing *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 343 (E.D. Pa. 2019); *Nellom v. Del. Cnty. Domestic Relations Section*, 145 F. Supp. 3d 470, 477 (E.D. Pa. 2015).  However, we previously determined, under essentially identical circumstances, that the motions to dismiss in *Silverberg I* presented facial challenges to subject matter jurisdiction.  *Silverberg I*, 2020 WL 108619, at *3-4.[16]  We have also applied the "more generous" standard of review for facial

---

[15] References in this Discussion to the parties' submissions in support of or opposition to the Motions to Dismiss cite to the CM/ECF pagination.

[16] We note that the distinction between facial and factual challenges is not entirely clear, and courts have not reached uniform conclusions on this issue.  *See Peet v. Bd. of Supervisors of New Hanover Twp.*, No. 21-2696, 2021 WL 5040358, at *1 n.2 (E.D. Pa. Oct. 29, 2021) (observing that the "use of Rule 12(b)(1) is further complicated by the rule's bifurcated standard of facial and factual challenges—depending on whether the sufficiency of the pleadings or their factual premises are being challenged for jurisdictional purposes"); *see also A.B. v. City of Philadelphia*, No. 22-1803, 2022 WL 5250272, at *2 (E.D. Pa. Oct. 6, 2022) (concluding that Rule 12(b)(1) motion based on *Rooker-Feldman*

challenges here.  *See Aichele,* 757 F.3d at 359 (noting that the standard for a facial challenge is more favorable to plaintiffs).  In any event, the "facial v. factual" distinction is academic here because, as in *Silverberg I*, the application of the *Rooker-Feldman* doctrine to all of Silverberg's claims is readily ascertained solely from the allegations and other material contained or incorporated in the Amended Complaint, much of which are also matters of public record subject to judicial notice.  *See Peet*, 2021 WL 5040358, at *1 n.2 (analyzing motion to dismiss based on abstention doctrine under Rule 12(b)(6) standard for facial challenges, which permits court to consider related state court proceedings as matters subject to judicial notice (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Buck*, 452 F.3d at 260).

2.    *Application of the Rooker-Feldman Doctrine*

"[The *Rooker-Feldman*] doctrine 'prohibits a federal court from exercising subject[-]matter jurisdiction' in certain cases involving state-court judgments."  *Silverberg I*, 847 F. App'x at 154 (quoting *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017)).  "The doctrine's namesake cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)—supply four conditions, which, when all satisfied, require the dismissal of a claim for lack of jurisdiction."  *Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

---

raised facial challenge); *Meyers v. Caliber Home Loans, Seterus, Inc.*, No. 19-596, 2019 WL 4393377, at *3 (M.D. Pa. Sept. 13, 2019) (construing 12(b)(1) motion based on *Rooker-Feldman* as a facial attack because defendants presented "a legal argument against jurisdiction as opposed to a factual one" (citing *Aichele*, 757 F.3d at 358)); *but see Kar v. HSBC Bank USA NA*, No. 20-1416, 2020 WL 7028555, at *2 (D.N.J. Nov. 30, 2020) ("A challenge under the *Rooker-Feldman* doctrine for lack of subject-matter jurisdiction is a factual challenge." (citing *Mirayes v. O'Connor*, No. 13-934, 2013 WL 6501741, at *3 (D.N.J. Dec. 11, 2013); *King v. Burr*, No. 17-2315, 2017 WL 3705872, at *2 (E.D. Pa. Aug. 24, 2017) (construing 12(b)(1) motion under *Rooker-Feldman* as a factual challenge), *aff'd*, 728 F. App'x 83 (3d Cir. 2018)).

284 (2005); *Great W. Mining & Min. Corp. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir.

2010)) (internal parallel citations omitted).  The doctrine bars a federal lawsuit if:

> (1) the federal plaintiff lost in a state court judicial proceeding; (2) the state court judgment or decree was rendered before the federal action was filed;[17] (3) the federal plaintiff complains of injuries caused by the state court judgment; and (4) the federal plaintiff invites the district court to review and reject the state court judgment.

*Id.* (noting that these requirements may be evaluated in any sequence, but because the first two

listed above are procedural, it may be efficient to analyze them first (citing *Hoblock v. Albany*

*Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005))).  The Third Circuit has observed that the

third and fourth requirements above "are the key to determining whether a federal suit presents

an independent, non-barred claim."  *Great W. Mining*, 615 F.3d at 166 (describing requirements

in a different order with the third above listed as the second).  In particular, the *Rooker-Feldman*

doctrine concerns injuries "produced by a state-court judgment and not simply ratified,

acquiesced in, or left unpunished by it."  *Id.* at 167 (quoting *Hoblock*, 422 F.3d at 88 (holding

that the third requirement was met when a government body acted "under compulsion of a state-

court order" and the "state-court judgment produced . . . the very injury of which the [litigants]

complain")).

        This doctrine does not bar federal courts from hearing claims that are "independent" of

the state-court judgment and stem from "other sources of injury, such as a third party's action."

*Great W. Mining*, 615 F.3d at 168 (citing *McCormick v. Barverman*, 451 F.3d 382, 392 (6th Cir.

2010) (holding that a claim that a party engaged in fraud and misrepresentation in a state-court

---

[17] The preceding state court judgment must be "effectively final," meaning that "(i) the highest state court has issued a terminal ruling; (ii) a lower state court has issued a ruling for which the time to appeal has expired, or the parties have voluntarily terminated the case; or iii) all questions of federal law have been resolved by the highest state court, notwithstanding any surviving state law or factual issues." *Merritts*, 62 F.4th at 776, n.8.

proceeding was independent of an injury caused by the state-court judgment)).  "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'"  *Id.* at 167 (quoting *Hoblock*, 422 F.3d at 88).  In this task, "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been caused by those proceedings.  (*Id.*) (internal quotation omitted).  In other words, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) (citing *Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. at 416).

Courts in various jurisdictions have applied *Rooker-Feldman* where a plaintiff filed a federal lawsuit as a means to invalidate a state court tax judgment.  *See Kepoint Preservation Trust Org. ex rel. Brown v. Fisher*, 173 F. App'x 191, 194 (3d Cir. 2006) (affirming dismissal of claim that real estate transfer taxes violated Contracts Clause and Pennsylvania law where earlier Pennsylvania court rulings that were adverse to plaintiff were "inextricably intertwined" with plaintiff's claims in federal court); *Holt v. Lake County Board of Commissioners*, 408 F.3d 335 (7th Cir. 2005) (finding that *Rooker-Feldman* doctrine applied to plaintiff's § 1983 action for injury caused by state court judgments upholding tax sale); *McCullough v. Town of Rocky Hill*, No. 23-1367, 2023 WL 11842887, at *4 (D. Conn. Nov. 9, 2023) (*Rooker-Feldman* doctrine barred action to the extent it sought review and rejection of the state court refusal to enjoin the tax sale of plaintiff's property); *Matthews v. Felts*, No. 21-245, 2021 WL 4593517, at *2 (N.D. Ind. Oct. 6, 2021) (holding that *Rooker-Feldman* barred 1983 action where plaintiff had no

injury beyond tax sale); *Santoro v. Cnty. of Collin, Texas*, No. 18-660, 2019 WL 5692187, at *5

(E.D. Tex. Aug. 16, 2019) (holding that *Rooker-Feldman* divested court of jurisdiction over

RICO and § 1983 claims contesting state judicial foreclosure and sale of property for delinquent

taxes), *report and recommendation adopted*, 2019 WL 4686361 (E.D. Tex. Sept. 26, 2019);

*Marquardt v. Supervisor of Dep't of Assessments & Taxation of Calvert Cnty.*, 195 F. Supp. 2d

706, 710 (D. Md. 2002) (dismissing claim that tax reassessment, which was upheld by state

appellate court, violated the Contracts Clause of the United States Constitution).

Courts also recognize that "[a] plaintiff impermissibly challenging a state-court judgment

may do so directly, by expressly asking a federal court to alter or overturn the judgment, or

indirectly, by asking the federal court to afford relief that in some way nullifies or invalidates the

state-court judgment." *Deeck v. Singer*, No. 24-1929, 2024 WL 3889097, at *3 (E.D. Pa. Aug.

20, 2024); *see also Kuznicki v. Nat'l Church Residences of Penn Hills, PA,* No. 23-2143, 2024

WL 129842, at *3 (W.D. Pa. Jan. 11, 2024) (noting that court "cannot directly or indirectly

review, negate, void or provide relief that would invalidate" state court judgment); *Labossiere v.

PHH Mortg. Corp.*, No. 18-12719, 2022 WL 1044965, at *2 (D.N.J. April 7, 2022) (explaining

that claims may be "an implicit and indirect attack on" a state-court judgment "rendering them

barred by *Rooker-Feldman* . . .  [i]rrespective of how the Plaintiffs label their claims" (internal

marks and citation omitted)).  "Consequently, when evaluating whether claims are barred under

*Rooker-Feldman*, a district court should look to the 'heart' of a plaintiff's complaint." *Id.*, 2024

WL 3889097, at *3 (citing *Downs v. IndyMac Mortg. Servs., FSB*, 560 F. App'x. 589, 591 (7th

Cir. 2014)).

Applying the foregoing requirements and principles, we find—as we did in

*Silverberg I*—that the four *Rooker-Feldman* conditions are satisfied and divest us of jurisdiction

over this matter.  With respect to the first requirement, Silverberg lost in the State Court in both

the Tax and PUFTA Cases.  In the Tax Case, the State Court entered default judgment against

Silverberg and later denied his Non Pros Motion, the Commonwealth Court affirmed, and his

appeals are exhausted.  *See Silverberg I*, 847 F. App'x at 155; *City of Phila. v. Richard J.*

*Silverberg & Assoc., P.C.*, 2019 WL 1502343.  In the PUFTA Case, which arises from the

unpaid Tax Case judgment, the State Court entered default judgment against Silverberg, and

although he filed an appeal, the Commonwealth Court denied his emergency applications

seeking to enjoin or stay the PUFTA Case proceedings, and Silverberg voluntarily terminated his

PUFTA Appeal less than a month later.

As to the second requirement, default judgment in the Tax Case was entered against

Silverberg in 2008, his Non Pros Motion was denied in 2017, and the Commonwealth Court

rejected his appeal in April 2019.  In the PUFTA Case, default judgment was entered against

Silverberg in November 2020, and he terminated his appeal in May 2021.  Silverberg did not file

this action until May 2023.  Notably, Silverberg's Opposition to the City Defendants' Motion to

Dismiss does not address the first and second *Rooker-Feldman* requirements or dispute that they

are satisfied.  (*See* Pl. Opp. to City Defs.' Mot., ECF No. 95, at 66-69.)

Instead, Silverberg focuses on the third and fourth requirements, contending they are not

satisfied because:

> • His "injuries were not caused by state court orders/judgments but rather by the
> City's use of legal process/proceedings for wrongful/unlawful purposes, namely
> the filing/pursuit of the tax/PUFTA matters. Further, the City effectively has
> admitted, as it must, that it has engaged in the challenged 'tax collection activities'
> pursuant to its municipal taxing authority and not a Court order/judgment."
>
> • He "is not challenging the City's taxing authority but rather its use of legal
> process/proceedings for wrongful/unlawful purposes, specifically to facilitate the
> proxy war."

26

- "[T]he Amended Complaint alleges that the City was not engaged in actual 'tax collection activities,' and therefore, any state court decisions merely 'acquiesced in' or 'ratified' the City's actions in connection with the tax/PUFTA matters rather [than] 'produced' them."

- "[He] agreed (in May and July 2021) to pay the full amount the City claimed was due and owing. Accordingly, plaintiff is not 'complain[ing] of' a state court judgment – plaintiff agreed to pay it."

- "[He] has not challenged or asked the district court to 'review and reject' any state court decisions/judgments."

(*Id.* at 67-69.)

The third and fourth requirements are key to a *Rooker-Feldman* analysis and are "closely related." *Great W. Mining*, 615 F.3d at 168.  Silverberg attempts to avoid *Rooker-Feldman* by alleging that his injuries were not caused by the State Court judgments but by alleged wrongful conduct in the filing and pursuit of the Tax/PUFTA Cases as part of a pre-existing "proxy war" that has its origins in the long-dismissed *Jackson* Odyssey litigation.  Thus, according to Silverberg, he is not complaining of, or asking this Court to review and reject, the State Court judgments.

These arguments do not survive scrutiny because they accept as true ***all*** the Amended Complaint's allegations—most of which are conclusory and/or devoid of factual basis; disregard facts reflected in the several judicial proceedings that are incorporated in the Amended Complaint and part of the public record; ***and then*** draw unwarranted and wholly implausible inferences from the deficient allegations.  The generosity of the applicable standard of review does not extend this far.[18]  *See Iqbal*, 556 U.S. at 678 (explaining that pleading standard requires more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," ""'labels and

---

[18] In addition, and while we acknowledge the doctrine generally affording liberal construction to *pro se* litigant submissions, Silverberg is a licensed attorney who has litigated extensively in this court, and "this doctrine is and should be inapplicable to the documents he submits." *Wilson v. Travelers Ins. Co.*, No. 14-920, 2015 WL 1422569, at *9 (E.D. Pa. Mar. 30, 2015)

conclusions,'" or "'naked assertion[s]'" devoid of "'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 555, 557)). The Amended Complaint's "factual" background regarding the alleged "proxy war" can be divided into the following general categories: (1) allegations containing Silverberg's version of the *Jackson* Odyssey litigation and conclusory factual and legal assertions about related wrongful acts that are the "reasons" for the "proxy war" (*see* Am. Compl. ¶¶ 51-179); (2) approximately 130 paragraphs alleging how and why the various Defendants conducted the "proxy war," including a ten-part series of allegations that refers to and/or asserts factual and legal conclusions about the Tax/PUFTA Cases and related judgment enforcement efforts (*see id.* ¶¶ 194-325); and (3) allegations purporting to link the filing and pursuit of the Tax/PUFTA cases to the *Jackson* Odyssey-related wrongdoing as the means by which Defendants conducted the "proxy war" to prevent Silverberg from exposing that wrongdoing. (*Id.* ¶¶ 45-50, 180-93, 326-32.) The third category includes, for example, allegations that:

- "Upon information and belief, the April 22, 2016 email [about the anticipated *Jackson* Odyssey book] and follow-up emails led certain individual defendants and/or the companies/organizations with which they were/are affiliated . . . to determine that action needed to be taken and to formulate a strategy concerning precisely what that action should be." (*Id.* ¶ 180.)

- "The determination to engage in a proxy war – which primarily consisted of activities in connection with the filing/pursuit of the tax/PUFTA matters – reflected the Core Defendants' recognition of and fear concerning the true extent of their wrongful/unlawful actions, the related risks/exposures, and of the consequences of the entire pattern of conduct being revealed and explained in a meaningful way to shareholders, stakeholders, regulators, lawmakers, law enforcement, market participants, both the for-profit and non-profit communities, and the public at large." (*Id.* ¶ 183.)

- "Under the guise of seeking to recover past due taxes that supposedly were due and owing, the City filed/pursued two lawsuits against plaintiff for reasons having nothing to do with taxes or the City more generally, which not only was (among other things) a use of legal process/proceedings for wrongful/unlawful purposes, fraudulent, an abuse of process, and a breach of fiduciary duty, but also was directly

contrary to the City's own legal and pecuniary interests and those of taxpayers." (*Id.* ¶ 187.)

• "The proxy war was not the first time that harassment, intimidation, oppression, threats, instilling fear, coercion, and retaliation were used as tactics in connection with the Jackson litigation concerning Jackson and/or his counsel, including with respect to personal safety/property." (*Id.* ¶¶ 326.)

• "At bottom, the Core Defendants and others determined to engage in fraud, racketeering, and a RICO conspiracy in an effort to prevent the story of their fraud, racketeering, and RICO conspiracy from being told. For its part, the Kenney Administration has failed to carry out a core function of government – to serve the public interest." (*Id.* ¶ 332.)

In short, all of Silverberg's claims are based on unsupported factual conclusions, legal conclusions couched as factual allegations, and unwarranted inferences. When these deficient allegations are disregarded, the Amended Complaint's allegations do not support any reasonable inference that the alleged "proxy war" is possible, let alone plausible. *See*, *e.g.*, *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (noting that court need not accept unsupported conclusions, unwarranted inferences, or legal conclusions couched as factual allegations).

Instead, Silverberg's allegations demonstrate that he is, in fact, complaining of injuries caused by the judgments rendered in the Tax/PUFTA Cases and is asking this Court to "directly or indirectly review, negate, void or provide relief that would invalidate" those judgments. *Labossiere*, 2022 WL 1044965, at *2; *see also Silverberg I*, 847 F. App'x at 156 (describing lawsuit as a "backdoor attack on adverse state judgments" (citing *Great W. Mining*, 615 F.3d at 169)). First, all the wrongful conduct allegedly committed in furtherance of the "proxy war" occurred in connection with the Tax/PUFTA Cases. In fact, the allegations indicate that the "proxy war" is nothing more than a label invented to describe the filing and pursuit of those cases in an effort to obscure the fact that this action is barred by *Rooker-Feldman*. Second, the causes of action asserted in the Amended Complaint are based entirely on alleged violations of law or tortious conduct committed in connection with the Tax/PUFTA Cases. (*See*, *e.g.*, Am.

Compl. ¶¶ 341, 345, 352, 368, 372, 375, 377, 383, 386, 389.  Third, all the injuries for which

Silverberg seeks relief stem from the Tax/PUFTA Cases and related judgment-enforcement

efforts.  (*See id.* ¶¶ 348, 353, 355-56, 372, 377, 380, 383, 386, 389, 392.)

 Finally, as to the fourth *Rooker-Feldman* requirement, this lawsuit, like *Silverberg I*,

"amounts to an impermissible invitation for a federal court to overturn state-court judgments."

*Silverberg I*, 847 F. App'x at 155 (citing *Great W. Mining*, 615 F.3d at 169).  All of Silverberg's

claims arise from the "the parade of horribles" that resulted from the judgments entered in the

Tax/PUFTA Cases and the related efforts to enforce those judgments.  *Id.*  Moreover, Silverberg

"cannot circumvent [the *Rooker-Feldman* doctrine] by asserting claims not raised in the state[-

]court proceedings or claims framed as original claims for relief.'"  *Id.* at 156 (*quoting United*

*States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)).  No matter how Plaintiff has cast or

attempted to recast his claims in this Court, we cannot revisit the State Court judgments.  *See*

*FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("'*Rooker-*

*Feldman* precludes a federal action if the relief requested in the federal action would effectively

reverse the state decision or void its ruling.'") (quoting *Charchenko v. City of Stillwater*, 47 F.3d

981, 983 (8th Cir. 1995)).  In short, because Silverberg's claims "request 'relief . . . in the federal

action [that] would effectively reverse the state decision[s] or void its ruling[s],' his federal

lawsuit satisfies the fourth element of the *Rooker-Feldman* doctrine."  *Silverberg I*, 847 F. App'x

at 156 (quoting *FOCUS*, 75 F.3d at 840 (citation omitted)).

 **B.** **Dismissal with Prejudice Is Warranted**

 In general, when a court dismisses an action for lack of subject matter jurisdiction, it does

so without prejudice.  *See Silverberg I*, 2020 WL 108619 ("Because the basis for dismissal is

lack of subject matter jurisdiction, dismissal will be without prejudice." (citing *Figueroa v.*

*Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999))).  However, when amendment would be

futile or inequitable, or the Court finds bad faith, undue delay, or prejudice, dismissal with

prejudice is appropriate.  *See*, *e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,

482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d

Cir. 2002).

Silverberg has now filed four lawsuits, including a total of eight complaints and amended

complaints, all asking this Court to effectively reverse or nullify the State Court judgments.

(ECF Nos. 1, 81; *Silverberg I*, ECF Nos. 1, 19; *Silverberg II*, ECF Nos. 1, 14; *Silverberg IV*,

ECF 1, 64.)  He has also filed multiple injunction motions, motions for partial summary

judgment, and requests for default.  (ECF Nos. 54, 107; *Silverberg I*, ECF Nos. 3, 5, 25, 26, 33;

*Silverberg II*, ECF No. 15; *Silverberg IV*, ECF Nos. 8, 77, 80.)  The various parties named as

Defendants in one or more of Silverberg's lawsuits, in particular the City Defendants, William

Penn, and Haas, have expended untold resources to respond to his pleadings and submissions.

In January 2020, we dismissed *Silverberg I* without prejudice based on the *Rooker-*

*Feldman* and *Younger* doctrines and comity principles, and the Third Circuit affirmed in 2021.

This has not deterred Silverberg from continuing his efforts to invalidate the State Court

judgments in this Court on the same grounds we rejected in *Silverberg I*.  His subsequent

lawsuits have not added well-pleaded allegations that support causes of action we can or should

entertain.  Instead, he has expanded his claims to challenge the PUFTA Case, named a host of

additional Defendants, and, in this action and *Silverberg IV*, added hundreds of conclusory and

otherwise dubious allegations in order to repackage his claims as arising from a fantastical

conspiracy he labels the "proxy war."  Silverberg's pleadings and other submissions in these

proceedings call to mind the court's observation in *Jackson II*:  "[T]his is not the first lawsuit

between these parties – in fact, it is the third lawsuit by the same plaintiff against the same core

defendants, and arising out of the same alleged harms (but with the cadres of accused defendants and the categories of alleged harms enhanced at each iteration of the charges)." *Jackson II*, 2006 WL 680933, at *7.

Under these circumstances, dismissal with prejudice is entirely warranted because amendment would be futile. Regardless of how he may attempt to dress up or disguise them, Silverberg's claims challenging the State Court judgments in this Court are barred by *Rooker-Feldman*, *Younger*, and principles of comity. *See Silverberg I*, 2020 WL 108619, at *4-7. Moreover, for the various reasons asserted in Defendants' Motions to Dismiss, it is very likely, if not certain, that Silverberg's claims of alleged § 1983, RICO, and common law violations arising from the State Court judgments cannot be amended such that they could survive dismissal under Rule 12(b)(6). *See Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." (citing *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983))); *see also Wright v. United States,* No. 22-1164, 2023 WL 4540469, at *2 (3d Cir. July 14, 2023) (affirming dismissal with prejudice where plaintiff had "ample opportunities to make her case" and complaint still suffered from multiple fatal flaws); *Deckard v. Emory*, No. 17-5182, 2020 WL 3960421, at *13 (E.D. Pa. July 13, 2020) ("Amendment would be futile due to the absence of subject matter jurisdiction based on the *Rooker-Feldman* doctrine and the probate exception."); *Mason v. O'Toole*, No. 19-1114, 2020 WL 1286382, at *1 (W.D. Pa. Mar. 18, 2020) (adopting report and recommendation and dismissing § 1983 complaint with prejudice based on *Rooker-Feldman* and futility of amendment); *Farzan v. J.P. Morgan Chase Bank N.A.*, No. 19-5156, 2019 WL 6339847, at *3 (D.N.J. Nov. 27, 2019) (dismissing complaint with prejudice where plaintiff would be unable to assert any claims not barred by the *Rooker-Feldman*

doctrine), *aff'd*, No. 19-3925, 2022 WL 17336211 (3d Cir. Nov. 30, 2022); *Roberts v. Inservco*

*Ins. Servs., Inc.*, 334 F. Supp. 3d 646, 650 (E.D. Pa. 2018) (dismissing complaint with prejudice

based on *Rooker-Feldman*, noting that plaintiff had several previous opportunities to amend and

failed to allege a claim the court could adjudicate), *aff'd sub nom. Roberts v. Inservco Ins. Servs.*,

765 F. App'x 656 (3d Cir. 2019); *Warkevicz v. Berwick Area Sch. Dist.*, No. 15-1922, 2016 WL

3753108, at \*17 (M.D. Pa. July 14, 2016) ("At this point, it is evident that, due to the legal

defects present in Plaintiff's case theory, further amendment would still leave the complaint

deficient as a matter of law."); *Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at

\*2 (E.D. Pa. Dec. 9, 2013) ("[A] District Court may exercise its discretion and refuse leave to

amend if such amendment would be futile, particularly when a plaintiff has had multiple

opportunities to improve the pleadings.").

Permitting amendment would also be grossly inequitable to Defendants, some of which

have been litigating Silverberg's related federal lawsuits for several years.  At this juncture,

"requiring counsel for the Defendants to brief for second, third, or fourth iterations, the very

legal questions that [they] have quite thoroughly briefed" previously would be inequitable.

*Warkevicz*, 2016 WL 3753108, at \*17; *see also Martin v. Impact Health*, No. 23-4447, 2024 WL

3512069, at \*5 (E.D. Pa. July 23, 2024) (dismissing complaint with prejudice where plaintiffs

already had multiple opportunities to state claims and permitting amendment would be

inequitable to defendant); Finally, although we do not explicitly find that Silverberg has pursued

these lawsuits in bad faith, we note that "[r]epetitive litigation is evidence of a litigant's

motivation to vex or harass a defendant where it serves no legitimate purpose."  *Kuznicki*, 2024

WL 129842, at \*3 (citing *Kennedy v. Getz*, 757 F. App'x 205, 207-08 (3d Cir. 2018) (per

curiam)); *see also Murray v. Capio Partners*, No. 23-842, 2023 WL 4956443, at \*6 (W.D. Pa.

Aug. 3, 2023) (dismissing complaint with prejudice were amendment would be futile, and

because plaintiff appeared to be acting in bad faith); *Shahid v. Possenti*, No. 22-1015, 2022 WL

1664363, at *7 (E.D. Pa. May 25, 2022) (dismissing complaint with prejudice "because of bad

faith, undue prejudice to the Defendants given Plaintiff's litigation history, and because [court]

consider[ed] amendment to be futile" (citing *Grayson*, 293 F.3d at 116), *aff'd*, No. 22-2117,

2022 WL 17076038 (3d Cir. Nov. 18, 2022); *Cooker v. Meadowood Corp.*, No. 21-2667, 2021

WL 5177705, at *1 (E.D. Pa. Nov. 8, 2021) (dismissing complaint with prejudice where

amended complaint failed to cure deficiencies previously delineated by court and observing that

this "raise[d] an inference of bad faith, and also prejudice to defendant in having to continue

litigating a case where there appears to be no cause of action")

## IV.    CONCLUSION

For the foregoing reasons, the Amended Complaint and all claims alleged therein have

been dismissed with prejudice.  (*See* ECF No. 171.)


**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**